CASE 52—ACTION FOR FRANCHISE TAX—APRIL 26.

# City of Newport, Etc. v. Commonwealth.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

1. AMENDING PETITION TO INCLUDE A NEW DEFENDANT.— The city of Newport having made a report for franchise tax in the name of the Newport Waterworks, an action against the Newport Waterworks was properly amended to make the city of Newport a substitute defendant.

2. CONSTITUTIONAL LAW—VESTED RIGHTS—NO COMPLAINT FROM PARTIES NOT AFFECTED.—A municipality will not be heard to complain of the invalidity of an act taxing its waterworks franchise on the ground that it devests vested rights of the holders of city bonds.

3. MUNICIPALITIES—LIABILITY FOR FRANCHISE TAX ON WATERWORKS. —A municipality owning waterworks and selling water generally to the public may, under the statutes, be required to pay a franchise tax.

4. TAXATION OF TANGIBLE PROPERTY.—On the tangible property constituting the waterworks plant the municipality is liable for taxation as a private corporation would be.

5. EXEMPTION ACT—REPEAL OF.—The act of March 8, 1878, exempting the Newport Waterworks from taxation as long as it should be unproductive was repealed by the adoption of the Constitution.

6. *Res Adjudicata.*—An adjudication upon a liability for taxes for one year is no bar to an action for taxes for a subsequent year, it not appearing that the adjudication resulted from a contract exempting the defendant.

HORACE W. ROOT FOR THE APPELLANT.

1. A litigant has no right by an amended pleading to substitute a new defendant for original defendant. Sub-division 1, art. 2, ch. 108, Ky. Stats.; Houston v. Kidwell, 12 Ky. Law Rep., 387;

City of Newport, &c., v. Commonwealth.

Bridgeport v. Miller, &c., 13 Ky. Law Rep., 927; Newman's Pleading & Practice, p. 288; Bliss on Code Pleading, sec. 429; Hart v. Bowie, 34 La. An., 323; 1 Am. & Eng. Ency. of Law, 546.

2. Is a municipal corporation subject to a franchise tax? Act of January 26, 1871, "An act to authorize the city of Newport to supply itself and others with pure water and to establish a waterworks." Ky. Stats., secs. 3143, 3058, sub-div. 4; Municipal Corporation, Dillon (4th ed.), vol. 1, sec. 27.

3. A general statute does not apply to or embrace a municipal corporation unless in express terms. 23 Am. & Eng. Ency. of Law, 365, paragraph E.

4. The principle or method of assessment and valuation of a corporation by capitalizing its net income upon a 6 per cent. basis is erroneous. Ky. Stats., sec. 4078; Henderson Bridge Co. v. Com., 17 Ky. Law Rep., 389.

W. S. TAYLOR, ATTORNEY-GENERAL, FOR THE APPELLEE.

1. It was proper to permit plaintiff to file an amended petition making the city of Newport a party. Civil Code, sec. 134; Heckman's Admr. v. L. & N. R. R. Co., 85 Ky., 631; L. & N. R. R. Co. v. Hill, 12 Bush, 131.

2. The right of the State to recover taxes on waterworks property owned by a city is too well settled to require discussion. City of Covington v. Com., 19 Ky. Law Rep., 105; Com. v. Makibben, 90 Ky., 384; Com. v. City of Louisville, 20 Ky. Law Rep., 893.

HORACE W. ROOT FOR APPELLANT IN A PETITION FOR A REHEARING.

Counsel cited in addition to the citations of his original brief: City of New Orleans v. Citizens' Bank of Louisiana, 167 U. S., 371.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

The secretary of the Newport Waterworks made a verified statement as required by section 4078, Kentucky Statutes, in order for the Board of Valuation and Assessment to determine the value of its franchise for taxation for the year 1894, upon which statement that board proceeded to value and assess the corporate franchise of the Newport Waterworks. Suit was brought in the Franklin Circuit Court for the taxes of that year, alleging that the New-

port Waterworks was a corporation, having and exercising privileges and franchises not allowed by law to natural persons. Summons having been served upon the president and chief officer of the board of waterworks trustees, there were filed a demurrer, a special demurrer for want of jurisdiction of the defendant, the Newport Waterworks, and an answer, in which the Newport Waterworks alleged that there did not and never had existed a corporation of that name, and denied that it was a corporation, or was organized or doing business as such. A few days after the filing of these pleadings, and before they were acted upon, the Commonwealth amended its petition, making the city of Newport a party defendant, alleging that it was a municipal corporation, a city of the second class; that it owned and operated the Newport Waterworks; that, by the terms of its charter, it was authorized to, and did, own and operate the waterworks, and charge tariff rates for water, as other companies; that the waterworks were not used by the city for governmental purposes, but as a private enterprise, the accounts thereof being kept distinct and independent of the governmental affairs of the city, all citizens who used the water being charged the regular tariff rate; that the city, so far as the waterworks and waterworks property were concerned, was engaged in the business of an ordinary water company, operating the works for profit; that, while not a corporation, the Newport Waterworks was used and operated as a water company, and had a secretary, duly elected by the city of Newport, the owner of the property, and duly selected as such secretary by the commissioners of the waterworks, who had theretofore been selected as such commissioners by the city, as provided in its charter; and that by said secretary the report to the Board of Valuation and Assessment was made.

Subsequently, the city entered its objection to the filing of the amended petition, and moved to set aside the filing, on the ground that neither at the time of the institution of the action, nor before, nor since was there any such defendant or corporation as the Newport Waterworks, and, therefore, there was no action commenced, or in being, to which the amendment could be made. This objection, and the demurrer to the petition, were overruled, and a judgment rendered, which was afterwards, by agreement, set aside, and an answer filed by the city of Newport pleading to the merits. An agreed statement of facts was filed, the case submitted, and judgment rendered against the city for the tax.

It is first urged that it was error to permit the amended petition to be filed, making the city of Newport a party defendant, upon the ground that there was no action pending against any natural or artificial person, and, therefore, nothing to be amended; that an amendment presupposes a real action or proceeding already pending in court; that, in this case, there was nothing to which an amendment could go, because there was no petition stating, or attempting to state, a cause of action against any real person, natural or artificial; and that the original petition was a nullity. It is further urged that this case is not one of misnomer, or of a suit against a real person by a wrong name, or against one person erroneously sued under the name of another, in which cases it seems to be conceded that an amendment might be made under the authority of section 134 of the Civil Code, and the cases of Heckman's Adm'r v. L. & N. Railroad Co., 85 Ky., 631 [4 S. W., 342], and L. & N. Railroad Co. v. Hall, 12 Bush, 131.

Upon the other hand, it is urged on behalf of the Commonwealth that as the city, by its own officers, caused the

report .for franchise tax to be made in the name of the
Newport Waterworks, and the waterworks were distinct
in management from the city government, being controlled
by commissioners selected by the city, and by whom water
rates were fixed, the waterworks were, in effect, a *quasi*
corporation, or a company or association, within the mean-
ing of sections 4077, 4078, Kentucky Statutes.

But, without going into that question, it seems to us that
the amendment and the original petition may be consid-
ered together as an original petition against the city of
Newport, to which the city entered its appearance with-
out reservation.

Nor does the case of Houston v. Kidwell, 83 Ky., 301,
12 Ky. L. R., 387 [14 S. W., 377], cited by counsel for ap-
pellant, seem to us to be in conflict with this view.  That
was an action for a new trial.  The petition was errone-
ously dismissed.   Afterwards, an amended petition was
filed alleging the discovery of additional evidence, but
which was merely cumulative.  The judgment dismissing
the original petition was not appealed from, and it was
held that the amended petition could not be treated as a
petition, for the reason that the relief sought was *res
adjudicata* by the final judgment on the first petition, from
which no appeal had been taken.

Nor does the citation from Newman's Pleading and Prac-
tice, page 288, apply.  That refers to a case where the
wrong person brings an action for a liability existing, but
existing in favor of another person than the plaintiff.
And, while it is there said that "the foregoing rules apply,
for the most part, equally to a mistake in the name of the
defendant as of the plaintiff," that does not apply to a case
like this, where the original petition is good upon its face,
but a mistake has been made in the name of the party upon

whom the liability rests, as the owner of specific, described property.  In such case, there would seem to be little difference whether the owner was sued originally by the name of another existing person (as in the Heckman's Adm'r and Hall cases, *supra*), or was sued by the name of a nonexistent person.

The question whether the city might have taken advantage of the mistake by special entry of its appearance and dilatory pleading is not here presented, as it appeared without reservation.

The answer presents several defenses:

First. That the city was authorized, by act of the Legislature, to build and operate a waterworks system, and has built such system, and operates it through a board styled the "Commissioners of Waterworks," having issued $800,-000 of bonds, $708,000 of which are still outstanding; that it exercises no right or privilege with respect to its waterworks which a natural person might not do; that its waterworks are situated within its corporate limits, or upon its own land outside the limits; that the report made by the secretary of that board was erroneous; that, including the interest upon the bonded debt created to build and operate the waterworks, the expense of operation was more than $35,000 in excess of the actual receipts; that the waterworks department of the city is not a paying institution, and its actual receipts in any year since the act authorizing it to be built have not been sufficient to meet both its operating expenses and the interest upon the bonds issued to build it, but that the city, by the annual levy and collection of a tax, meets and pays off the interest and bonds of the waterworks falling due in each year; that it will not be self-sustaining for many years to come; and that its tangible property used in connection with the waterworks sys-

tem was, in the year 1894 and subsequent years, assessed by the State for taxation, and taxes thereon paid.

Second. That the city exercises no special or exclusive privileges or franchises not allowed by law to natural persons, with respect to its waterworks; that the works are used for governmental purposes, and not as a private enterprise; that the accounts of the waterworks are not kept distinct and independent of the governmental affairs of the city; that it is not engaged in the business of an ordinary water company, and that the waterworks are not a private enterprise, operated for profit.

Third. That, by an act adopted March 8, 1878, it was provided that the waterworks should be exempt from county and State taxation so long as it should be unproductive; and that it has been unproductive since its establishment.

Fourth. That the imposition of a franchise tax is in violation of the State Constitution, and also in violation of subsection 1, section 10, article 1 of the Federal Constitution, prohibiting the passage of a law impairing the obligation of contracts, for the reason that, at the time of the issuance of the bonds, there was no franchise tax authorized to be collected from the city on account of the waterworks system, and the bondholders have a vested right to the bonds free from such a tax.

Fifth. That the liability of the city to a franchise tax is *res adjudicata*, by a judgment rendered in a suit by the Commonwealth against the Newport Waterworks and the city of Newport for a franchise tax, on account of the city's ownership and operation of the waterworks, for the year 1893, under the same law under which the present action was instituted; the subject-matter of that suit being identical with the subject-matter of the case at bar, except that in that action the suit was to collect the tax for the year 1893, and the present suit is for the year 1894.

As to the fourth ground, it is sufficient to say that the bondholders were not parties to this proceeding, and that, so far as we are informed, it has never been held that the fact that no tax was levied upon the property at the time of its acquisition had the effect to prevent the imposition of a tax thereon in subsequent years.

The claim of exemption under the act of 1878 can not be sustained, as it is not claimed that any contract right existed thereunder, and the exemption thereby given is repealed by the present Constitution.

The first and second defenses present the question, in substance, whether a municipal corporation can be subject to a franchise tax. It seems, under the case of City of Owensboro v. Commonwealth (Ky.), [49 S. W., 320], that the waterworks might be exempt from taxation as public property used for public purposes, under section 170 of the Constitution, if operated solely for the purpose of extinguishing fires, cleaning the streets, and the like, which, under the opinion in that case, would be deemed governmental purposes; and that, if the tangible property held and used for that purpose would not be taxable, neither would the city be taxable on a franchise to so operate and use it. Is the case altered by the fact that the city, while operating the waterworks for the convenience of its people, makes a charge against them for furnishing them with water?

In the case of Commonwealth v. Makibben, County Judge, 90 Ky., 384 [14 S. W., 372], it was held by this court that the power granted to the city of Newport to operate its waterworks was not granted as necessary to carrying on its municipal government as a political power, but merely as a private corporation for the convenience or profit of its citizens, and, therefore, not only taxable by the

Commonwealth, but not to be constitutionally exempted from taxation. Said the court, through Judge Bennett: "But may a city be treated as a private corporation in the exercise of powers not necessary to carrying on its municipal government as a political power? We have heretofore said that it may be so treated. We have also said that its property necessary to carrying on its municipal government as a political power is not subject to State taxation. But, if it is not necessary for such purpose, then it must be treated as the property of a private corporation, and is subject to State taxation, unless it is expressly exempted in consideration of public services," (referring to City of Louisville v. Com., 1 Duv., 298 (85 Am. Dec., 624), and Barbour v. Board of Trade, 82 Ky., 649).

In the same opinion, the court quoted, with approval, as follows, from Bailey v. City of New York, 3 Hill, 531 (38 Am. Dec., 669), in which case it was decided that the city, in erecting waterworks, acted in its private, not public character: "But the distinction is quite clear and well settled, and the process of separation practicable. To this end, regard should be had not so much to the nature and character of the various powers conferred as to the object and purposes of the Legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, political, municipal character; but if the grant was for the purpose of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation, *quo ad hoc*, is to be regarded as a private company. It stands on the same footing as would any individual or body of persons upon whom a like special privilege had been conferred."

So, in City of Covington v. Com., 19 Ky. Law Rep., 105 [39 S. W., 836], it was held, in an opinion by Chief Justice

Lewis, that the waterworks of the city of Covington could not, under the Constitution, be exempted by special statute from taxation (referring to Clark v. Louisville Water Co., 90 Ky., 515 [14 S. W., 502], in which the same question was decided).

It seems, therefore, to be well settled that the tangible property used for waterworks purposes is subject to taxation; and that the municipality, as to it, occupies the position of, and is to be treated as, a private corporation.

Section 4077, Kentucky Statutes, which requires a franchise tax to be paid by certain enumerated companies, includes water companies in the list of companies required to pay such tax, and also requires such tax to be paid by "every other like company, corporation or association;" and section 4082 Kentucky Statutes provides that "Whenever any person or association of persons not being a corporation nor having capital stock, shall, in this State engage in the business of any of the corporations named in the first section of this article (section 4077), then the capital and property, or the certificates or other evidences of the rights or interests of the holders thereof in the business or capital and property employed therein, shall be deemed and treated as the capital stock of such person or association of persons for the purposes of taxation and all other purposes under this article, in like manner as if such person or association of persons were a corporation."

The three sections (4077, 4078, and 4082), taken together, clearly indicate the intent of the Legislature that no corporation, company, association, person, or aggregation of persons should be permitted to engage in any of the businesses enumerated in section 4077, without thereby being required to make report to the Board of Valuation and Assessment, and becoming subject to the so-called franchise tax.

Under the doctrine laid down in the cases referred to, the municipality occupies, as to its waterworks, the same position as would a private corporation owning such works. It follows, inevitably, therefore, from that doctrine, that not only is the tangible property used by the city for waterworks purposes taxable by the Commonwealth as non-municipal and private property, but that, as to that property, it is subject to a franchise tax, and must make report therefor, as required in section 4078.

The only question remaining for decision is upon the plea of *res judicata.*

The plea in this case avers that the subject-matter of the former suit was identical with that involved in this action, and that the facts were the same in both actions, except that the former action attempted to collect a tax for the year 1893 and the present action was attempting to collect a tax for the year 1894; that said action was tried upon its merits, and a judgment rendered by the circuit court dismissing the plaintiff's petition. A copy of the judgment was filed as part of the answer, and it was further averred that the judgment had never been reversed or modified, and no appeal had ever been taken, but that it had become final and conclusive.

The authorities seem to hold that when a court of competent jurisdiction has, upon a proper issue, decided that a contract, out of which several distinct promises to pay money arose, has been adjudged invalid in a suit upon one of those promises, the judgment is an estoppel to a suit upon another promise founded on the same contract. But taxes do not arise out of contract. They are imposed *in invitum.* The taxpayer does not agree to pay, but is forced to pay; and the right to litigate the legality of a tax upon

all grounds must, of necessity, exist, regardless of former adjudications as to the validity of a different tax.

In Keokuk & W. R. Co. v. Missouri, 152 U. S., 314 [14 Sup. Ct., 597], the Supreme Court held: "A suit for taxes for one year is no bar to a suit for taxes for another year. The two suits are for distinct and separate causes of action. If there were any distinct question litigated and settled in the prior suit, the decision of the court upon that question might raise an estoppel in another suit, upon the principle stated in Cromwell v. Sac County, 94 U. S., 357. But, as was held in that case, where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue, or points controverted, upon the determination of which the finding or verdict was rendered. . . . The same principle was reaffirmed in Nesbit v. Independent District of Riverside, 144 U. S., 610 [12 Sup. Ct., 746], and in Wilmington & W. R. Co. v. Alsbrook, 146 U. S., 279, 302, [12 Sup. Ct., 72]. In the case of City of Davenport v. Chicago, R. I. & P. R. Co., 38 Iowa, 633, the Supreme Court of Iowa held that a decree in favor of a railway company in a suit for taxes for a prior year would not estop the State from collecting the taxes for a subsequent year; each year's taxes constituting a distinct and separate cause of action. 'The cases,' said the court, 'are unlike those where two causes of action (as, two promissory notes) forming the subject-matter of successive actions between the same parties, *both growing out of the same transaction*, in which a defense set up in the first suit, and held good will conclude the parties in the second. . . Taxes of separate years do not, in any just sense, grow out of the same transaction. They are like distinct claims on two promissory notes, made upon two distinct and separate,

though similar, transactions between the same parties. A judgment on one of such notes, it is quite clear, would not be of any force as an estoppel in an action on the other note between the same parties.' It could never be tolerated that the State should be forever barred in the collection of taxes by an erroneous decision." 146 U. S., 314-316, [13 Sup. Ct., 105, 106.]

In Lake Shore & M. S. Ry. Co. v. People, 46 Mich., 208, [9 N. W., 249], a suit for taxes, there had been a decision adverse to the validity of the taxes for certain previous years, but the court held that the result of a suit for the taxes of particular years is not *res judicata* in subsequent suits between the same parties for taxes of other years, and the decisions upon legal questions arising in the first case are important only as precedents. Said Chief Justice Marston, delivering the opinion:

"The decree in the Wayne circuit would not prevent the State from claiming and seeking to recover taxes accruing subsequent to the years or taxes then passed upon. This is a new controversy, for a new cause of action, and in which some of the legal questions then passed upon are again raised, and the decision of the court thereon is of no importance, except as a precedent. In this case, it is not conclusive. Such was the view of Mr. Justice Campbell upon a similar question in the case in 9 Mich., already referred to; and, as that case is reported, there does not seem to have been any diversity of opinion on this point. The parties are bound, in so far as regards the subject-matter then involved, but are at liberty to raise anew the same legal questions in a case arising subsequently, even although the facts may be substantially alike in other respects. The principle is that a party shall not be twice vexed for the same cause; but this is not the same cause,

but one arising since then, and the State is not in this case seeking to recover any portion of the taxes the collection of which was restrained in that case."

We do not think the plea of *res adjudicata* avails in this case. As stated in 21 Am. & Eng. Enc. of Law, p. 227, the rule is: "To make a matter *res judicata* there must be a concurrence of the four conditions following, namely: First, identity of the subject-matter; second, identity of cause of action; third, identity of persons and parties; fourth, identity in the quality of the persons for or against whose claim is made." The taxes for the subsequent year constitute a new cause of action; it may be similar to the cause which was adjudicated, but a distinct and different cause. The rulings of the court upon the legal questions involved, if rendered by this court, are authority here, to the extent, and no further, than like decisions would be, in a suit between different parties. In our opinion, it would be against public policy to hold that a judgment of a circuit court upon a question of taxation is forever binding upon this court, not only as to taxes there in litigation, but also as to taxes for all subsequent years, merely because counsel for the Commonwealth failed to bring the question here. Such a ruling would seem to be open to the objection that it would hold the Commonwealth bound by the laches of its officer.

The decision of the circuit court as to the taxes of 1893 is not binding upon this court as to the taxes for subsequent years. It follows, therefore, that the judgment must be affirmed.

The whole court sitting.

JUDGE DuRELLE DELIVERED THE FOLLOWING SEPARATE OPINION IN RESPONSE TO PETITION FOR REHEARING:

The original opinion in this case, prepared by direction

of the court, correctly set forth the views of the majority of the court. It did not fully state the views of the minority upon the question of *res judicata.*

When the petition for rehearing was filed, the minority took the position that the opinion should be so extended as to rest the decision upon a doctrine in which all could unite, and not decide, or appear to decide, a question not necessarily raised by the record, and upon which the members of the court are not in harmony. The majority, however, have decided to adhere to the opinion as originally delivered, and the views of the minority upon this question are here presented.

The plea of *res adjudicata* in this case avers that the subject-matter of the former suit was identical with that involved in this action; that the facts were the same in both actions, *except that the former action attempted to collect a tax for the year 1893, and the present action was attempting to collect a tax for the year 1894;* that the former action was tried upon its merits, and a judgment rendered by the circuit court dismissing the plaintiff's petition, a copy of the judgment being filed as part of the answer. It was further averred that the judgment had never been reversed or modified, and no appeal had ever been taken, but that it had become final and conclusive.

It will be observed that this plea does not show upon what ground the court based the judgment relied upon as *res judicata,* nor does the judgment itself show on what ground it was based. Giving the fullest effect to the pleading, and assuming, as we must, under the averment that the subject-matter of the former suit was identical with the subject-matter of this, that the same defenses were pleaded in that case as in this, and that the court decided that case upon the merits, and dismissed the petition, it

still does not appear whether the petition in that case was dismissed because the court held that there was a contract exemption from taxation in favor of appellant, because it held that a municipality could not be subjected to a franchise tax with respect to its use of any of its property, or because it held valid some one of the other defenses pleaded in this action, and presumably pleaded in that.

It therefore becomes necessary for us to consider whether the doctrine of *res judicata* is applicable to all of the defenses pleaded; for, if inapplicable to one, as that defense may, for all that appears in the answer, have been the one upon which the former case was decided, we must apply the maxim, *"Fortius contra proferentem,"* conclude that that was the defense upon which the case was decided, and hold the pleading insufficient.

This brings us to consider the question whether *res adjudicata* as to the validity of a tax for one year can apply in a suit for a tax for another year.

The authorities, in general, are to the effect that when, in a court of competent jurisdiction, upon a proper issue, a contract out of which several distinct promises to pay money arose has been adjudged invalid in a suit upon one of those promises, the judgment is an estoppel to a suit upon another promise founded on the same contract. But taxes do not arise out of contract. They are imposed *in invitum.* The taxpayer does not agree to pay, but is forced to do so; and the question is whether the judgment of a court fastening one such burden upon the citizen estops him to contest the validity of a similar burden thereafter sought to be imposed upon him, and, on the other hand, whether the refusal of the court to impose such a burden estops the government from thereafter asserting a similar right against that citizen. And, in considering this question

[29]

tion, we shall consider it on the theory that there is no question of contract involved, but that the question arises solely upon the legality of the tax, as in a case where the question is upon the constitutionality of the law, or as to whether the property sought to be taxed is embraced by the law.

In Keokuk & W. R. Co. v. Missouri, 152 U. S., 314, [14 Sup. Ct., 597], the Supreme Court held: "A suit for taxes for one year, is no bar to a suit for taxes for another year. The two suits are for distinct and separate causes of action. If there were any distinct question litigated and settled in the prior suit, the decision of the court upon that question might raise an estoppel in another suit, upon the principle stated in Cromwell v. Sac County, 94 U. S., 357. But, as was held in that case, where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. . . . The same principle was reaffirmed in Nesbit v. Independent Dist., of Riverside, 144 U. S., 610, [12 Sup. Ct., 746], and Wilmington & W. R. Co. v. Alsbrook, 146 U. S., 279, 302 [13 Sup. Ct., 72]. In the case of City of Davenport v. Chicago, R. I. & P. R. Co., 38 Iowa, 633, the Supreme Court of Iowa held that a decree in favor of a railway company in a suit for taxes for a prior year would not estop the State from collecting the taxes for a subsequent year, each year's taxes constituting a distinct and separate cause of action. 'The cases,' said the court, 'are unlike those where two causes of action (as two promissory notes) forming the subject-matter of successive actions between the same par-

ties, *both growing out of the same transaction,* in which a
defense set up in the first suit, and held good, will con-
clude the parties in the second. . . . Taxes of sepa-
rate years do not, in any just sense, grow out of the same
transaction. They are like distinct claims on two promis-
sory notes, made upon two distinct and separate, though
similar, transactions between the same parties. A judg-
ment on one of such notes, it is quite clear, would not be of
any force as an estoppel in an action on the other note be-
tween the same parties. It could never be tolerated that
the State should be forever barred in its collection of tax-
es by an erroneous decision," 152 U. S., 314-316, [14 Sup.
Ct., 597].

But in New Orleans v. Citizens' Bank, 167 U. S., 396,
*et seq.,* [17 Sup. Ct., 905, *et seq.*] in an elaborate opinion
the Supreme Court, while admitting that in the Keokuk
case the opinion, *arguendo,* discussed the question of wheth-
er a judgment against the validity of a tax for one year
would be a bar to a suit for taxes for a subsequent year,
held the expressions of the court used in argument in that
case to be *dictum,* and distinctly decided that "the estoppel
resulting from the thing adjudged does not depend upon
whether there is the same demand in both cases, but ex-
ists, even although there be different demands, when the
question upon which the recovery of the second demand
depends has, under identical circumstances and conditions,
been previously concluded by a judgment between the par-
ties or their privies." And, again, on page 398, [17 Sup. Ct.
914]: "It follows, then, that the mere fact that the demand
in this case is for a tax for one year, and the demands in
the adjudged cases were for taxes for other years, does
not prevent the operation of the thing adjudged, if, in the

prior cases, the question of exemption was necessarily presented and determined upon identically the same facts upon which the right of exemption is now claimed."

The language used in the case of City of Davenport v. Chicago, R. I. & P. R. Co., 38 Iowa, 633, has been greatly qualified, if not repudiated, by the same court, in Goodenow v. Litchfield, 59 Iowa, 226, [9 N. W., 107, and 13 N. W., 86], where the court said: "The question whether the estoppel is effectual will depend upon the issues in the two actions. If the right to recover and the defense thereto are based upon precisely the same ground, why litigate again a question that has been determined? In such case the very right of the matter has been determined by a court of competent jurisdiction."

Upon the other hand, in Lake Shore & M. S. Ry. Co. v. People, 46 Mich., 208 [9 N. W., 250], a suit for taxes, there had been a decision adverse to the validity of the taxes for certain previous years, but the court held that the result of a suit for the taxes of particular years is not *res adjudicata* in subsequent suits between the same parties for taxes of other years, and the decisions upon legal questions arising in the first case are important only as precedents. Said Chief Justice Marston, delivering the opinion: "The decree in the Wayne Circuit would not prevent the State from claiming and seeking to recover taxes accruing subsequent to the years or taxes then passed upon. This is a new controversy, for a new cause of action, and in which some of the legal questions then passed upon are again raised, and the decision of the court thereon is of no importance except as precedent. In this case it is not conclusive. Such was the view of Mr. Justice Campbell upon a similar question in the case in 9 Mich. [Railroad Co. v.

Auditor General, 9 Mich., 448], already referred to, and, as that case is reported, there does not seem to have been any diversity of opinion on this point. The parties are bound in so far as regards the subject-matter then involved, but are at liberty to raise anew the same legal questions in a case arising subsequently, even although the facts may be substantially alike in other respects. The principle is that a party shall not be twice vexed for the same cause; but this is not the same cause, but one arising since then, and the State is not, in this case, seeking to recover any portion of the taxes the collection of which was restrained in that case."

In State v. Bank of Commerce, 95 Tenn., 222 [31 S. W., 993], it was held that a judgment adverse to a claim for taxes for one year constituted no bar to a suit for taxes of a subsequent year; and in the recent case of Union & Planters' Bank v. City of Memphis, [46 S. W., 557] (decided April 2, 1898), the same court, through Judge McAlister, said: "Again, we think the plea of *res judicata* in tax cases is to be limited to the taxes actually in litigation, and is not conclusive in respect of taxes assessed for other and subsequent years. *Since this is not a federal question,* we decline to follow the ruling in City of New Orleans v. Citizens' Bank, 167 U. S., 371, [17 Sup. Ct., 905], in which it was held, by a majority opinion, that a judgment in a tax case is as conclusive of the taxes of other years as it is of the taxes for the years actually involved. In State v. Bank of Commerce, 95 Tenn., 231 [31 S. W., 996], we said: 'These suits being for other years than those sued for in the Farrington case [Farrington v. Tennessee, 95 U. S., 686], that decision is not, as an adjudication, conclusive of the present case.'"

We do not think the plea of *res judicata* avails in this case. The power to tax is a high governmental power, exercised against the will of the person taxed, and, in our opinion a decision as to one cause of action arising under a tax statute is no more binding upon the government or the citizen than the construction of a penal statute would be in a second prosecution against the same person for an offense exactly similar. The former adjudication would, in such case, have weight as a precedent, but would not bind the parties by way of estoppel. The rulings of the court upon the legal questions involved are authority here to the extent, and no further, that like decisions would be in a suit between different parties. As matter of public policy, and upon grounds of public necessity, we think the principle of *res adjudicata* ought not to be applied to questions of taxation, where the State is exercising its sovereign power.

We concur, therefore, in the conclusion reached by the majority, that this court can not follow the doctrine held by the Supreme Court in New Orleans v. Citizens' Bank to its full extent.

But whether the State is bound by a former adjudication that there exists a contract exemption from taxation, or as to the construction of such contract, is a question not necessarily here involved, and to the decision of which it may be that different principles apply. There would seem to be an essential difference between the Commonwealth exercising the highest of its sovereign powers, a power necessary to its very existence, and the same Commonwealth, its sovereignty laid aside, binding itself as a mere corporate entity by a sealed instrument. But it is not, in our judgment, necessary to go into this question, nor even to decide that there is a differ-

ence.   We think the opinion should be extended upon the lines here indicated.

CHIEF JUSTICE HAZELRIGG AND JUDGE BURNAM CONCUR IN THIS SEPARATE OPINION.