Commonwealth v. Lexington Cemetery Company.

--------

CASE 22—PROCEEDING BY THE COMMONWEALTH BY THE AUDITOR'S AGENT AGAINST THE LEXINGTON CEMETERY COMPANY TO SUBJECT THE FUNDS OF SAID COMPANY TO TAXATION.—NOVEMBER 18.

# Commonwealth v. Lexington Cemetery Co.

APPEAL FROM FAYETTE CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

TAXATION—FUNDS OF CEMETERY COMPANY.

Held:  Funds of a cemetery company derived from the sale of lots therein, are not exempt from taxation under Constitution, section 170, and Kentucky Statutes, section 4026, exempting from taxation "places of burial not held for private or corporate profit," and "institutions of purely public charity."

L. J. MOORE, ATTORNEY FOR APPELLANT.

There is no intention on the part of appellant in this case, to have any of the property which has been sold or used for burial purposes assessed for taxation, but only such as appellee has used for corporate purposes, and none of the property which appellee uses for burial purposes was described in the pleadings.

The evidence shows that the directors of this cemetery bought 106 acres of ground for $40,000 cash and sold a portion thereof for $48,000, thereby making a clear profit of $48,000, from the sale of ground which they never used for burial purposes at all, all of which is a corporate profit and not one cent of this sum has been used except for corporate profit.

Our contention is, that this corporate fund is not exempt from taxation under the claim of an "institution of purely public charity," or under any provision of the Constitution or statutes of the State of Kentucky now in force.

## AUTHORITIES CITED.

Morris v. Lone Star, chapter No. 6 Royal Arch Masons, 5 S. W., 519; Com. v. Masonic Temple Co., 10 Rep., 325; Redemptionist Fathers v. Boston, 129 Mass., 178; Academy v. Exeter, 58 N. H., 306; Indianapolis v. Grand Masters, 25 Ind., 518; Colace v. State, 19 Ohio, 110; State v. Board of Assessors, 35 La., 663; Morgan v. Louisiana, 95 U. S., 221; Wilson v. Gains, 103 U. S., 417; L. & N. R. R. Co. v. Palmer, 109 U. S., 224; Bradley v. McAtee, 7 Bush, 667; E. & H. R. R. Co. v. Com., 9 Bush, 439.

MORTON & DARNALL AND J. D. & G. R. HUNT, ATTORNEYS FOR APPELLEE.

1. The appellee's liability to taxation prior to the year 1893 must be determined by the terms of the revenue act in force up to November, 1892, which was then superseded by the present law. The language of that act, which was approved May 17, 1886, is so plain on the point in issue, as to leave no room for controversy. That statute exempts from taxation "public schools, churches, and all property of seminaries, asylums, hospitals, infirmaries and colleges, and all other funds devoted to charitable purposes, and church parsonages and public cemeteries, except those owned by joint stock companies. or associations which declare a dividend."

This language we submit is conclusive, and will admit of no. other construction than the one for which we contend.

2. The exemption from taxation claimed by appellee for 1893 and later years, must be determined by the construction of the revenue act of 1892, now section 4026, Kentucky Statutes, providing exemption in the same terms as provided in section 170 of the present Constitution which exempts all "institutions of purely public charity."

Our contention is, that the Lexington cemetery company is an "institution of purely public charity" within the meaning of the Constitution and statutes above mentioned.

On general principles and without reference to the special authorities hereinafter cited, we submit that it can not be doubted that the objects of this company are clearly and distinctly charitable within the well established principles on that subject. Humanity and religion are alike imperative in the

Commonwealth v. Lexington Cemetery Company.

demand that the dead must be buried. Whoever therefore performs or aids in the performance of that duty to that extent, relieves the government of a public burden, and on this principle a public cemetery is held to be a public use, authorizing the exercise of the power of eminent domain, which, as is well known, can only be called into existence for uses strictly public in their nature.

A charity is none the less a public one because its benefits can not extend to every individual in the community; provided it embraces, within the benefits, all, or as many as practicable, of the class or classes intended to be served; nor does it contravene the object of a charity that reasonable charges are, in proper cases, made for services rendered, provided the income thus derived is applied to the object of the association as contra distinguished from gain to the promotors.

### AUTHORITIES CITED.

Constitution, sec. 170; Kentucky Statutes, sec. 4026; Ould v. Washington Hospital, &c., 95 U. S. Rep., 311; Perry on Trusts, sec. 687; Trustees Ky. Female Orphan School v. City Louisville, 100 Ky., 478; Mills on Eminent Domain, sec. 19; 6 Am. & Eng. Ency. of Law, p. 528; 4 Am. & Eng. Ency. of Law, p. 272 and note; Evergreen Cem. Asso. v. Becker, 52 Conn., 551; (3 Atlantic Rep., 353) Long v. Rosedale Cem., 84 Fed. Rep., 135; Railway Co. v. Arlut, 19 U. S., App., 612; Johnson v. Hallifield, 79 Ala., 423; (58 Am. Rep., 598) Rhymer's Appeal, 93 Penn., 142; (39 Am. Rep., 736) Bates v. Bates, (134 Mass.) 45 Am. Rep., 305; Hopkins v. Crenshaw, 165 U. S., 352; Perry on Trusts, 5th ed., vol. 2, sec. 706.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

This proceeding was instituted, under section 4241 of the Kentucky Statutes, by the auditor's agent for Fayette county against the Lexington Cemetery Company, to have assessed for taxation, as omitted property, certain notes, bonds, and cash belonging to the company from 1880 to 1893, inclusive. The judgment of the county court was to the effect that $43,000 in notes and cash, belonging to the company, was liable to taxation since the adoption of our present Constitution. An appeal by the company to the Fayette circuit court resulted in a judgment setting

aside the order of the county court, and the Commonwealth has appealed to this court.

The Lexington Cemetery Company was incorporated by an act of the General Assembly in February,.1848. It was empowered to acquire ground, plat it into lots, and sell them exclusively for burial purposes, and apply the proceeds to the improvement and ornamentation of the cemetery, and the incidental expenses necessary to keeping it in repair. It was not organized for profit, and no dividends have ever been declared, and no salaries are paid to any of its officers. But under their management it has become a beautiful city of the dead, "vast, ornate, and in scrupulous condition." The bodies of more than 14,000 persons sleep under its sod. Among them are the bones of some who in life shed immortal glory upon the nation. Neither talent, taste nor money have been spared to make it worthy of the universal sentiment of reverence for the burial places of the dead which springs from the Christian belief in the final resurrection of the body. More than $6,000 is spent anually in ornamentation and care of the grounds. Yet so able and judicious has been the management that the company has on hand a large sum of money, the proceeds, in the main, of lots sold, the prices of which range from $6 for a place for a single burial, to much higher prices, according to the extent and location of the lot; and it is this fund which the Commonwealth seeks in this proceeding to subject to taxation.

None of the previous Constitutions recited specifically the property which should be exempt from taxation, and the General Assembly enjoyed and exercised a very wide discretion in matters of this kind, especially when the property of any form of charitable institution was involved. The act of 1873, which is found in the Revised Statutes, ex-

empted from taxation "real estate and investments devoted to public graveyards." This was followed by the act of 1886, found in chapter 92, art. 1, section 9, subsection 5, of the General Statutes, which exempted from taxation "all property owned by public cemeteries, except those owned by joint-stock companies, which declared dividends." We think it is perfectly clear that under the laws that existed prior to 1893 the funds of cemetery companies were exempt from taxation; but appellee's claim to exemption for 1893 and all subsequent years must be determined from the provisions of section 170 of the Constitution and section 4026 of the Kentucky Statutes, which was enacted in conformity therewith by the General Assembly, and which reads as follows: "There shall be exempt from taxation public property used for public purposes; places actually used for religious worship with grounds attached thereto, and used and appurtenant to the house of worship, not exceeding one-half acre in cities or towns and two acres in the country; places of burial, not held for private or corporate profit; institutions of purely public charity." Both the Constitution and statute distinguish between the "places of burial" and "institutions of purely public charity," and whilst we are not disposed to question the soundness of the contention that appellee is to some extent, at least, a quasi charitable institution, the authorities in support of this contention are somewhat meager. Perry, Trusts, section 706, says: "It is now settled that trusts to maintain burying grounds of the donors are so far charitable that they will be carried into effect." And in support of the text he cites the case of Dexter v. Gardner, 7 Allen, 243, and Swasey v. Society, 57 Me., 523. In Dexter v. Gardner, the bequest provided that the income should be appropriated for the benefit of the "Friends' Meeting,"

and it was held to be valid because the purchase and repair of burying grounds was regarded by Friends as one of their religious duties, to which, under their usages and discipline, they applied their funds. It was a good bequest to a religious society for religious purposes. In Swasey v. Society the court said bequests for the repair of tombs have been recognized as charitable. And in the great case of Jones v. Habersham, 107 U. S., 174, 2 Sup. Ct., 336, 27 L. Ed., 401, a bequest to keep a burial place in good order was held to be valid because the Georgia Code enumerates among charitable usages the improvement and repair of burial grounds and tombstones. But we are unable to see how the doctrine applied in these cases can be so extended as to exonerate the funds sought to be subjected to taxation in this case as devoted to a purely public charity. The ground on which this contention is argued by counsel is that humanity and religion require that the dead shall be buried, and that, if this office be not performed by friends, relatives, or associations formed to aid in the purpose the burden must fall on the public in its organized capacity, and that, in consequence, whoever performs or aids in the performance of this public duty relieves to that extent the government of a public burden, and, when done without expectation of reward by the association, entitles it to be classified as an institution of "purely public charity." A similar contention, based upon a more plausible line of reasoning, was made in City of Newport v. Masonic Temple Ass'n, 108 Ky., 333 (21 R., 1785) (56 S. W., 405, 49 L. R. A., 252), and in response thereto this court said: "There are many commendable organizations, owning a large amount of property, and doing often much work of benevolence, such as the Knights of Pythias, the Elks, the Odd Fellows, the Red Men, Sons of Temperance,

and the like; but so long as they confine their beneficence to their own members or their widows or orphans, or are designed for charitable purposes purely public, they can not be regarded as institutions of purely public charity within the meaning of our Constitution. To so hold would be to give substantially no effect to the words 'purely public,' in that instrument, and leave few, if any, private charities which would not be exempt from taxation. The section is framed so minutely that it is impossible to escape the conclusion that it was designed to narrow exemption from taxation, and to limit them to the objects expressly named. It must be fairly construed, with a view to promote its purposes, and the exemptions allowed by it can not be extended by implication." And in the case of Widows' and Orphans' Home of Odd Fellows of Kentucky v. Bosworth (23 R., 1505), 65 S. W. 591,—where a similar contention was made, the court said: "The framers of the Constitution knew very well that there were many institutions of private charity, which were doing much good, and were maintained by voluntary contributions, without gain or profit. If they had designed to exempt these institutions, they had only to retain the phraseology of the law then long in force, which exempted public schools, churches, and all property of seminaries," etc. ". . . They evidently intended to change the rule which exempted all property which was devoted to charitable purposes, and from which no profit or gain was made, and to exempt only institutions of purely public charity." It is true that all persons who are willing and able to pay the prices charged may have lots in appellee's burying grounds and become stockholders, but certainly this does not bring them within the scope of institutions of purely public charity. Whilst we fully appreciate and approve the well-nigh universal

sentiment that the graves of the dead should be decently and tenderly cared for, there can be no escape from the conclusion that appellee is not an institution of purely public charity, as contemplated by the Constitution and statute. And whilst their place of burial is expressly exempted, we are of the opinion that the money and notes held and owned by them are liable to taxation.

For the reasons indicated, the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.

Whole court sitting.

Judges Paynter and O'Rear dissenting.

Petition for rehearing by appellee overruled.