**CAVE HILL CEMETERY COMPANY
et al., Appellants,**

v.

**William E. SCENT, Commissioner of
Revenue et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 17, 1961.

As Modified on Denial of Rehearing
Dec. 15, 1961.

James W. Stites, Carl L. Wedekind, Jr., Charles W. Milner, Louisville, Ky., for appellants.

John B. Breckinridge, Atty. Gen., William S. Riley, Hunter B. Whitesell, Hal O. Williams, Dept. of Revenue, Frankfort, for appellees.

MILLIKEN, Judge.

This case presents to the Court the question of whether securities held by the Cave Hill Cemetery Company and the Cave Hill Investment Company are subject to ad valorem tax assessments by the Common-

wealth of Kentucky. The case turns on whether Cave Hill is a public institution using its property for public purpose and thus exempt from taxation under Section 170 of the Constitution of Kentucky.

There are two funds involved, the "Preservation Fund" and the "Endowment Fund." The trial court held that the "Preservation Fund" was exempt from taxation, and to this part of the court's judgment the Commonwealth has appealed. The trial court further held that the "Endowment Fund" was not exempt from taxation, and to this ruling Cave Hill has appealed. The case originated as a declaratory judgment action brought by Cave Hill.

Cave Hill Cemetery Company was incorporated by a special act of the General Assembly approved February 5, 1848. Cave Hill Investment Company was incorporated by a special act of the General Assembly approved February 11, 1882.

Cave Hill Cemetery originated as a city cemetery, with lands provided by the City of Louisville from the old Cave Hill farm (Sec. 2, Act of 1848), and the managers of the Cemetery elected and controlled by the Mayor and the Council of Louisville (Sec. 3, Act of 1848). Under this charter the elected treasurer of the Cemetery Company was required periodically to report a statement of his accounts to the City authorities (Sec. 4, Act of 1848), and the proceeds from the sale of lots, over and above that necessary for immediate expenses, were turned over to the City Treasurer, who set up a permanent fund and applied the interest as it accumulated to the maintenance and preservation of the Cave Hill property (Sec. 5, Act of 1848).

As Cave Hill was developed and additional lands acquired, the burden of overseeing the operation of the Cemetery and administering the funds derived from the sale of lots was removed from the City of Louisville, in the interest of efficiency, and placed in the hands of the managers of the Company, with proper safeguards to insure that the management of the funds would continue in the same manner as it had under the direct control of the City of Louisville. (An Act to Amend the Charter of Cave Hill Cemetery, approved February 9, 1864.) As set forth in this amendatory act, the City of Louisville and Cave Hill Cemetery Company had, by contract dated March 24, 1859, specified that Cave Hill would set apart one-fifth of the proceeds of the sale of lots to be invested, with the income used exclusively for the preservation of the grounds.

When the Cave Hill Investment Company was formed in 1882, the Legislature, at the same time, amended the charter of the Cemetery Company once again, requiring that the payments that originally had to be made to the City (and subsequently by contract were set aside by the managers) were now to be paid over to the Investment Company (Chapter 177, approved February 11, 1882). This fund, which now receives 50% of the monies obtained from the sale of burial rights, is known as the "Preservation Fund." An additional fund, the "Endowment Fund," is made up of special contributions from owners of burial rights or others for maintenance service beyond the bare necessities provided by the other fund. The Investment Company simply performs the function formerly done by the City Treasurer.

Most of the assets of the Cave Hill Investment Company were invested in government or City of Louisville bonds, but, due to the drop in interest rates in the period involved, the income from these sources almost dried up and was not sufficient to maintain the necessary expenses of operating and caring for the Cemetery. The directors of the Company, in an effort to secure enough income for maintenance, without asking for tax assistance, invested in a few non-exempt stocks and bonds rather than go to the City for tax money to supplement their fading income (Sec. 5, Act of 1882). It is these securities upon

which the Department of Revenue is here seeking to collect an ad valorem tax. We will now examine more closely the legislative history.

The special legislative Act of 1848 creating Cave Hill Cemetery Company as "a body politic and corporate" was more than a mere charter and incorporation of the Cave Hill Cemetery Company; it was, in effect, a legislative ratification of the efforts of the City of Louisville to establish a public cemetery, for it authorized the City to "set apart, donate and convey to the Cave Hill Cemetery Company any part of the Cave Hill farm, not more than 50 acres, to be perpetually held and used for the purpose of a Rural Cemetery," (Cave Hill farm being at that time outside of the City), and the Legislature in turn authorized the Cave Hill Cemetery Company to take and hold any other land by devise and purchase, not exceeding 100 acres, and to "take and hold by gift or devise money and personal estate not exceeding $100,000 in value." Provision also was made for the Cave Hill Cemetery Company to refund to the City the cost of the land out of proceeds of the sale of lots, and the treasurer of the Company was required to execute bond and give full accounting to the City once a year. Furthermore, the managers of the Cave Hill Cemetery Company were empowered to make "rules and regulations in relation to the duties, management, and appointment of officers and agents, and their pay, and to make all other necessary rules and regulations * * * for the *government* of lot holders and visitors of said Cemetery," and the City was "required to pass all necessary ordinances with adequate penalties to protect said Cemetery and everything pertaining thereto from injury or damages."

 The use of the words "body politic and corporate" in the 1848 legislative Act was undoubtedly intended to constitute Cave Hill Cemetery Company a public or municipal (in a broad sense) corporation as distinguished from a private corporation,

37 Am.Jur., Mun.Corp., Sec. 3, thus retaining in the state control of the relationship between the City, as an arm of the state, and Cave Hill Cemetery Company, as an arm of the state, and to retain legislative control of the Cemetery Company itself. On amendment to the charter of the Cemetery Company in 1864, a duty was imposed on the Cemetery Company to set aside "one-fifth of the proceeds of the sale of lots, and invest the same as often as may be convenient, so as to create a perpetual fund for the preservation of the Cemetery grounds after a sufficient revenue shall cease to be derived for that purpose from the sale of lots; and the principal of said fund, so invested, shall never be used." The imposition of such trust duties upon the Cemetery Company as a public corporation by the legislature implies its power to change the arrangement if it sees fit to do so. "It is surely not competent for a mere municipal organization which is made trustee * * * to set up a vested right in that character to maintain such organization in the form in which it existed when the trust was created, and thereby prevent the state from changing it as the public interests may require." City of Philadelphia v. Fox (1870), 64 Pa. 169, 182. The power of the Legislature to make such changes arises from the desirability of placing no obstacle in the way of an organ of the government. Bogert, Trusts & Trustees, Sec. 521; 2 McQuillin on Mun.Corp., Sec. 420. As a public or municipal type corporation, as an arm of the state, the property of the Company necessarily is public property and, if used for a public purpose, is exempt from taxation under the provisions of Section 170 of the Constitution.

In keeping with the control thus retained by it, the Legislature created Cave Hill Investment Company in 1882 for the purpose of transferring management of the funds of Cave Hill Cemetery Company, apparently to create a *private body to solicit contributions*, Bogert, Trust & Trustees, Sec. 130. It was required that the president of Cave Hill Cemetery Company be one of the directors "and the other four shall be elected

by the Board of Managers of Cave Hill Cemetery Company" from among owners of burial rights in the Cemetery. The Investment Company was given the power to invest in United States, State of Kentucky and City of Louisville bonds, but it could not invest in other securities until "the President and all of the Directors of said Company shall consent thereto in writing before said investment is made, and the Managers of Cave Hill Cemetery Company also consent in writing before said investment is made." The Investment Company was authorized to accumulate a fund the income from which was to be paid over to the Cemetery Company to be used exclusively for the "protection, preservation and ornamentation of the grounds of the Cave Hill Cemetery Company, but no part of the principal fund shall ever be used." The Investment Company was authorized to secure gifts, donations, bequests, and devises and (use) the same as directed by the donors." The Investment Company had to report its financial status twice annually to the Cemetery Company and the latter had the right at all times to examine the books and papers of the Investment Company.

The nonprofit Cemetery Company and the Investment Company are so integrated that the latter is essentially a trustee of the invested funds of the former. Had the Cemetery Company continued to hold and manage its funds, solely for the preservation and maintenance of the Cemetery, it seems to us there would be little question that they were public funds being used for a public purpose. In the light of the close connection between the Cemetery Company and the Investment Company, whose sole purpose for existence is to serve the former, we believe it reasonable to conclude that the funds held by it and obtained by it, whether principally for the maintenance of favored lots or not, clearly serve the overall public purpose of preserving, beautifying and maintaining the Cemetery.

In creating Cave Hill Cemetery Company as a "body politic," the Legislature recognized the public nature of the Cemetery,

recognized its public purpose, authorized its maintenance and development by the financial means mentioned, and retained unto itself the legislative power to alter or modify the legal structure as the public interest may require, even to the point of authorizing the levy of taxes for its preservation and maintenance in case the presently established methods of financing the Cemetery prove inadequate. In the peculiar factual situation before us for consideration, it seems to us that permitting the collection of an ad valorem tax by the Department of Revenue on any of the funds involved would tend to thwart the obvious purpose of the Legislature—to make this public cemetery self-sustaining, and thus avoid the need of granting it support from public taxation. For these reasons we conclude that the funds involved are public property used for a public purpose within the meaning of Section 170 of the Constitution, and therefore exempt from taxation.

■ The unappealed judgments of former years are not determinative of the present litigation. The doctrine of res judicata ordinarily has little application to tax litigation (51 Am.Jur., Taxation, Sec. 1251, p. 1065 et seq.), for "the taxes for a subsequent year constitute a new cause of action." City of Newport v. Commonwealth, 106 Ky. 434, 50 S.W. 845, 849, 51 S.W. 433, 45 L.R.A. 518. See, also, Louisville Garage Corporation v. City of Louisville, 303 Ky. 553, 198 S.W.2d 40; German Gymnastic Association of Louisville v. City of Louisville, 306 Ky. 810, 209 S.W.2d 75.

■ We conclude that both the Preservation Fund and the Endowment Fund are exempt from ad valorem taxation as being public property used for a public purpose within the exemption from taxation provision of the State Constitution. Sec. 170.

The judgment accordingly is affirmed on the appeal of the Commonwealth and reversed on the appeal of Cave Hill.

BIRD, C. J., and WILLIAMS and PALMORE, JJ., dissent.

WILLIAMS, Judge (dissenting).

When Cave Hill Cemetery Company was incorporated by the Legislature in 1848 the City of Louisville was given the power to convey 50 acres to the Cemetery Company for the purpose of a rural cemetery. The mayor and city council were authorized to fill vacancies on the Board of Managers. A portion of the proceeds of the sale of lots was to be used to refund moneys advanced by the City of Louisville for improvement of grounds and the surplus when otherwise not appropriated was to be paid into the city treasury as a permanent improvement fund. In 1882, the Legislature amended the charter of Cave Hill Cemetery Company providing that the managers be elected by the lot owners and vacancies filled by the Board of Managers. Also the requirement that the surplus of the sale of lots be paid into the city treasury was repealed. By separate Act that same year the Legislature incorporated Cave Hill Investment Company and gave it authority to receive any income or other funds for the Cemetery Company. The funds received were to be invested and held for the improvement of the cemetery. Thus beginning in 1882 Cave Hill Cemetery Company ceased to have any connection with the City of Louisville and became by legislative act simply a non-stock, non-profit corporation.

The majority opinion stresses the fact that the legislative Act of 1848 created the Cemetery Company as "a body politic and corporate," and, consequently, the corporation is said to be a public corporation as distinguished from a private corporation. That question was decided many years ago to the contrary in Commonwealth v. Lexington Cemetery Company, 114 Ky. 165, 70 S.W. 280, 281. The Lexington Cemetery Company was incorporated by the Legislature in 1848, the same year Cave Hill Cemetery Company was incorporated. The Act incorporating Lexington Cemetery Company also specifically stated that it was made "a body politic and corporate." This Court said in the above-cited case:

"* * * Whilst we fully appreciate and approve the well-nigh universal sentiment that the graves of the dead should be decently and tenderly cared for, there can be no escape from the conclusion that appellee is not an institution of purely public charity, as contemplated by the constitution and statute. And whilst their place of burial is expressly exempted, we are of the opinion that the money and notes held and owned by them are liable to taxation."

Section 170 of the Kentucky Constitution provides certain specific exemptions from taxation. Places of burial not held for private or corporate profit are exempt. Thus Cave Hill Cemetery Company grounds are not taxed. The two funds in question here should be taxable under authority of the Lexington Cemetery case. The only way in which they might be exempt is to declare them to be "public property used for public purposes," which is exempt under the Constitution, section 170. The Cave Hill Cemetery Company is not a public corporation. It is controlled and managed by those individuals who have purchased lots. Furthermore, the sale of lots and maintenance of cemetery grounds is not a public purpose per se. The funds are neither public property nor are they used for public purposes. Most especially is this true of the Endowment Fund, which is derived from donations of individuals for the purpose of maintaining and beautifying specific lots. It is well settled that tax exemptions are strictly construed against the one claiming the exemption. The majority opinion has the effect of construing this tax exemption most favorably to the one claiming it.

For the above reasons I respectfully dissent from the majority opinion. Chief Justice BIRD and Judge PALMORE join me in this dissent.