CASE 80—PETITION EQUITY—OCTOBER 7.

## Henderson Bridge Co. v. City of Henderson.

APPEAL FROM HENDERSON CIRCUIT COURT.

1. RIGHT OF CITY TO TAX BRIDGE.—A city may be constituted a taxing district, and as such authorized to impose a tax upon property in the district for local purposes, such as for schools and railroads, although the same property may not be subject to taxation for ordinary city purposes for the reason that it derives no benefit, actual or presumed, from the city government; and it is not essential to the validity of such a tax by the city as a taxing district that a particular piece of property sought to be taxed should derive a benefit from the improvement or enterprise for which the tax is imposed. The Legislature having determined that the taxing district will be benefited, the court will not inquire whether a particular piece of property sought to be taxed will derive a benefit.

   A bridge across the Ohio river from the city of Henderson, on the Kentucky shore, to a point on the Indiana shore, is subject to taxation by the city for school and railroad purposes, under an act of the Legislature authorizing the city to impose such a tax upon real estate within its limits, the limits of the city extending to low water mark on the Indiana shore.

2. SAME.—A city ordinance accepted by the bridge company, granting to the company the use of a street of the city for the purpose of constructing the approaches to its bridge, with the proviso that nothing in the ordinance shall be construed as "waiving" the right of the city to tax the bridge, constitutes such a contract between the city

Henderson Bridge Co. v. City of Henderson.

and the company as authorizes the city to tax the bridge, not only for school and railroad purposes, but for ordinary city purposes. The use in the contract of the term "not waiving the right" was intended to create the right referred to.

3. COLLECTION OF TAXES BY SUIT.—The bridge, at least for the purpose of collecting taxes, should be considered as a part of a railroad, and consequently falls within the principle announced in Elizabethtown and Paducah Railroad Company v. Trustees of Elizabethtown, 12 Bush, 239.

Chief Justice Holt, in a separate opinion, places the right of the city to tax the bridge for ordinary city purposes upon the ground that it is within the city limits, and derives benefits from the city government, while he places the right to tax for railroad and school purposes upon the ground that the city is made a taxing district for that purpose.   Judge Pryor dissents.

WM. LINDSAY FOR APPELLANT.

1. The petition herein should have been dismissed upon the ground that the city of Henderson has no statutory authority to enforce the collection of taxes by suit in equity, or by any kind of a proceeding in the courts. (Johnson v. Louisville, 13 Bush, 527; Baldwin v. Shine, 84 Ky., 502; Louisville Water Co. v. Commonwealth, 89 Ky., 244.)

2. If the Henderson bridge is to be regarded as substantially a railroad, as contended by counsel for appellee, the alleged assessments in this case are void because not made pursuant to the provisions of article 3, chapter 92, General Statutes, Bullitt & Feland's edition, 1887.

3. The new issue of city bonds, under the act of June 30, 1878, authorizing the city of Henderson to fund its indebtedness, extinguished and satisfied the school, gas, water-works and railroad bonds, and a general levy of city taxes sufficient to pay the interest on the new bonds was required by the act to be made each year; but the city government, in the years 1885, 1886 and 1887, disregarded the provisions of the act of 1878, and made separate and distinct levies to pay the interest accruing upon the supposed school, water-works, gas and railroad indebtedness, and this departure from the legislative authority rendered the levies void, even if the railroad bridge be subject to taxation for any purpose. (City of Henderson v. Sneed, 8 Ky. Law Rep., 687.)

4. The question was directly involved in the case of the Louisville Bridge v. Louisville as to whether that bridge was taxable for school, water-works and railroad purposes, and the decision was to the contrary, although there was an act in that case under which the express power to tax was claimed.

· YEAMAN & LOCKETT ON SAME SIDE.

· Brief not in record.

H. W. BRUCE, WM. LINDSAY, YEAMAN '& LOCKETT IN PE-
TITION FOR REHEARING.

1. The bridge, beyond low water-mark on the Kentucky shore, is not in
the *taxable boundary* of the city of Henderson, and, therefore, not in
the "taxing district" created by the legislative acts authorizing the
railroad and school taxes. The extension of the city boundary to
low water-mark on the Indiana shore was only intended to enlarge
the police jurisdiction of the city, and not to make subject to taxation
property on the river that was not otherwise taxable. (Louisville
Bridge Co. v. City of Louisville, 81 Ky., 189.)

2. The provision of the ordinance that "nothing herein shall be construed
as *waiving* the right of the city to levy and collect taxes" can not be
construed as creating the right; nor as a concession on the part of
appellant that the right existed. The words do not mean any more
than that the city does not *give up* any right of taxation she then
legally possessed .

3. In the absence of legislative authority taxes can not be recovered by
suit. (Louisville Water Co. v. Commonwealth, 89 Ky.)

If the bridge is substantially a railroad. as contended by counsel
for appellee, so that taxes upon it can be recovered by suit, then it
should be assessed as a railroad as prescribed by article 3 of chapter
92, General Statutes.

4. The provision of the Constitution of the United States that "no State
shall pass any law impairing the obligation of contracts," prevents a
State from impairing the obligation of a contract by *a decision of its
courts* altering the construction of the law. (Gelpcke v. City of
Dubuque, 1 Wall., 206; Havemeyer v. Iowa Co., 3 Wall., 294; Olcott
v. Supervisors, 16 Wall., 678.)

Under the law, as declared in the Louisville bridge case, the con-
struction of the Henderson bridge was begun. Under the authority
of that case an important contract was entered into between the
appellant, the bridge company, and the appellant, the railroad com-
pany, whereby the latter undertook to keep the bridge in repair, and
pay all legally assessed taxes thereon. This court can not now change
the law so as to impose a heavier burden upon the railroad company
than could be imposed upon it under the law as declared at the time
the contract was entered into.

JOHN YOUNG BROWN, MONTGOMERY MERRITT, JOHN L.
DORSEY FOR APPELLEE.

Brief not in record.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellant was organized under an act of the
Legislature of this State, approved February 9, 1872,

Henderson Bridge Co. v. City of Henderson.

for the purpose of erecting and equipping a railroad bridge across the Ohio river, and of charging certain tolls for the crossing of railroad trains thereon. The city of Henderson, the appellee, by its ordinance, approved —— day of ———, 18—, and accepted by the appellant on the 10th day of February, 1882, granted to the appellant the right to construct its bridge and approaches on or over the center of its Fourth street, and on the line thereof, to low water-mark on the Indiana side of the Ohio river. Also the right of the use of the land between Water street, in said city, and low water-mark on the Kentucky side of the Ohio river, extending one hundred feet below and three hundred feet above the said Fourth street, was granted to the appellant for erecting such wharves, elevators or other buildings deemed necessary or convenient for the successful operation of said company. It was also provided in said ordinance: "Nothing herein shall be construed as waiving the right of the city of Henderson to levy and collect taxes on the approaches to said bridge, or any building erected by said bridge company within the corporate limits of said city, the bridge itself, and all appurtenances thereto within the limits of said city."

The appellant's bridge was constructed across the Ohio river at the place designated in the above-named ordinance. The appellee caused all that part of the appellant's bridge situated on the Ohio river, south of low water-mark on the Indiana shore, to be taxed for the purpose of paying the railroad and school taxes that the appellee was authorized to impose and collect on real estate within her limits; also the taxes

for municipal purposes. The appellant contends that, as its bridge is not protected by the city, and as it does not receive any of its benefits, it should not be taxed by the city for city governmental purposes proper, or other local purposes which the city government may be authorized to levy and collect on the real property within her limits. The Louisville Bridge Company v. The City of Louisville, 81 Ky., 189, and other cases, are relied on in support of this contention. In the Louisville Bridge case, and others referred to by counsel, all that is decided is, that in order to authorize the city government to subject real estate situated within its corporate limits to taxation for city or municipal purposes only, there must be actual or presumed benefits to such property by the city government being extended over it. It is upon this principle that farming lands, taken into the corporate limits of the city merely for the purpose of increasing the city revenue, *i. e.*, for the exclusive benefit of the city, can not be taxed by the city for municipal purposes only. There must be some actual or presumed benefit to authorize such taxation. Accordingly this court held in the case *supra* that the Louisville bridge received no actual or presumed benefit from the city government proper, and, consequently, the bridge was not subject to city or municipal taxation. But, independent of this principle, this court has long since and often distinguished between the power of the city to tax real estate situated within its limits, for city or municipal purposes only, and for such district purposes as the Legislature might authorize; that the Legislature might create a city

boundary, or designate any other boundary, without reference to existing civil or political districts, into taxing districts for certain local purposes. For instance, it is held in the case of the County Judge of Shelby County v. The Shelby R. Co., 5 Bush, 225, that the Legislature could create a certain portion of Shelby county into a taxing district for the purpose of aiding in the construction of a railroad through such district. The court, in that case, approves the language of the court in the case of the People v. Lawrence, 36 Barb., 194, to the effect that the "legislature are not confined in such taxation to existing political divisions. They may create a district for the purpose of taxation or assessment." Also in case of Burnett v. Sacramento, 12 Cal., 76: "The burden may be levied upon the whole county or town, or on those most immediately benefited."

This court, in the case of the City of Henderson v. Lambert, 8 Bush, 608, has decided that the act of March 9, 1867, authorizing certain counties, cities, etc., to aid in building the Evansville, Henderson and Nashville Railroad, and authorizing such counties, cities, etc., to levy and collect a tax for the purpose of paying any subscription that they might make to the capital stock of said road, had the effect to make such counties and cities voting said tax, taxing districts; and we now hold that the appellee, having voted said tax, is a taxing district. She voted said tax, not under her ordinary powers of taxation for city or municipal purposes, but as a taxing district. In the same case it was held that, as the act of March 15, 1869, provided "that all the territory now em-

braced within the city of Henderson shall be and is incorporated as a school district, which shall be under the control and management of a board of trustees appointed by the mayor,'' such territory constituted a taxing district, and the right to tax the land within such boundary for school purposes, and the right of the city to tax the same land for city purposes, rested upon a different footing; that the former could not be deemed a city or municipal tax, but was a district tax, notwithstanding it was to be collected by the ordinary collecting agencies of the city.

We see no good reason why the boundary of a town or city should not be made a taxing district, as distinguished from the ordinary taxing power of the towns or cities, as well as other designated localities where there are no towns or cities. Under the power of the city to tax for the ordinary purpose of carrying on the city government, she can not impose a tax upon the estate within her limits for the purpose of aiding in building railroads or supporting schools. For such purpose there must be express authority, and that authority need not be conferred upon the city as a city, but as a taxing district, and the authority may be given the city authorities to collect this tax without militating against the proposition that such territory is a taxing district.

The city may, as a taxing district, assess property within its limits, and collect the taxes thereon, that she would not be authorized to assess and collect for municipal purposes only. In the former case the inquiry is, is the property within the taxing district? And does the act authorize its taxation? In thelat-

latter case the inquiry is, is the property benefited, or presumably benefited, by the taxation? In the former case the Legislature has authorized the voters of the district to vote the railroad or school tax upon the assumption that it will be a benefit to that or succeeding generations in the way of financial, moral or intellectual improvement. The assumption may turn out to be a mistake, or the enterprise may be only partially successful, or it may be detrimental. The chances *pro* and *con* must, in voting, be deemed to have been considered, and each voter must be deemed to have agreed to take the risk of a benefit or a detriment, and to pay the tax voted without reference to how that matter may ultimately turn out. After such tax is voted the owner of real estate situated in the taxing district will not be heard to say that his property, thus situated, is not benefited by the enterprise for which the tax was voted, and, in the nature of things, can not be benefited by it. None of the real estate may be, in fact, benefited by it, and if one could be relieved of the tax because he was not benefited by it, why not all? The answer is, that the tax is authorized and voted upon the assumption that it will be beneficial, and if this assumption turns out to be a mistake as to this or that piece of property, the tax must nevertheless be paid upon all of it.

It has been held by this court in the case of McFerran v. Alloway, 14 Bush, 581, that an island situated in the Ohio river, near the Indiana shore, and which could not be benefited by the building and the running of a railroad through the district to which the

island belonged and was a part, was nevertheless lia-
ble for the tax that the district voted in aid of said
road.    The court in that case said: "The power on
the part of the Legislature to establish the district
or to authorize the particular precinct to vote the tax
is conceded, and the fact that the local improvement
has been or is being constructed in the taxing district
is also admitted, and in such a case it seems to us
the legislative discretion on the subject must control.
The court has so often determined that such power
existed in the Legislature of this State that it is no
longer an open question, and the benefits to be de-
rived from those living in the locality of the improve-
ment having been determined by the Legislature in
passing upon the act under which the tax was im-
posed, the court has no revisory power over it.    In
the judgment of the Legislature, this tax district is
benefited by the improvement, and the fact that an
actual benefit is not derived by one living in a re-
mote part of the district in which it is difficult to
approach the road or highway, is not an argument
against the imposition of the burden.''

It is well settled that the appellee's jurisdiction ex-
tends to the low water-mark on the Indiana shore,
but she can not tax property that is surrounded by
said river, such as an island, for city or municipal
purposes, for the reasons already indicated.    And in
the Louisville bridge case this principle was applied
to the bridge property.    But it is manifest that the
appellee, as a taxing district, may tax such property.
If it was an island in the Ohio river, fronting the
appellee, no one would doubt that the appellee, as

a taxing district, could tax it. Instead, the appellant's property, which is realty, and extends across the Ohio river, is taxed. This property is used for profit, and can not be less benefited by the appellee than an island would be if situated in the middle of the river, or near the Indiana shore, yet the appellee, as a taxing district, may tax the island, and we see no good reason why the same rule should not be applied to the appellant's property.

The appellee also seeks to tax the appellant for municipal purposes generally. This the appellee, under like conditions, according to the decision in the Louisville bridge case, *supra*, can not do. This, as said, the appellee can not do, because the appellant's property, being situated in the Ohio river, is not sufficiently benefited by the appellee's government to authorize it to tax the appellant's said property for the support of its government proper. So the question is, does the contract entered into between the appellant and appellee, in which the appellant secured certain rights and privileges from the appellee, and in consideration thereof the appellee reserved the right to tax the appellant's entire structure within its jurisdiction, amount to a contract right to tax the appellant's property to low water-mark on the Indiana shore?

It is conceded, according to the Louisville bridge case, that the appellee's jurisdiction to the Indiana shore is for police purposes only. But it is clear that this is owing to the fact that the property situated in or over the water of the Ohio river not being actually or presumably benefited by the city govern-

ment, is not subject to the payment of municipal taxes; consequently the jurisdiction of the appellee on said water is, of necessity, ordinarily confined to police purposes only. So, as said, the question is, has the appellee the power to tax said property by reason of a contract made with the appellant?

Now the appellant obtained from the appellee the right to construct its bridge and approaches on or over the centre of its Fourth street, and on the line thereof to low water-mark on the Indiana side of the Ohio river, &c.; also the right to the use of the land between Water street, in said city, and low water-mark on the Kentucky side of the Ohio river, extending one hundred feet below and three hundred feet above the said Fourth street, was granted to the appellant for erecting such wharves, elevators or other buildings deemed necessary or convenient for the successful operation of said enterprise.

In consideration of said grant it was agreed "nothing herein shall be construed as waiving the right of the city of Henderson to levy and collect taxes on the approaches to said bridge, or any buildings erected by said bridge company within the corporate limits of said city, the bridge itself, and all appurtenances thereto within the limits of said city."

The appellant contends it was only meant to reserve the right to tax such property of the appellant as was theretofore subject to taxation by the city government, and as that part of the bridge situated on the water of the Ohio river was not, for the reason above indicated, subject to taxation, the reservation relates to that part of the bridge that the appellee had the right to tax

under the law. It is evident that the contract was well considered, and prudently drafted by men skilled in that kind of work, and it is not presumed that they engaged in a mere *nudum pactum*, but they meant to set forth a business transaction. Now, that business transaction was evidently this : The appellant desired rights and privileges that it did not possess, and which it could not possess without the consent of the appellee. So it said to the appellee, grant these privileges, and you may tax, what? Only the approach to said bridge? No, because the appellee already had the right to tax that, and it had made no concessions that could possibly be construed as waiving that right. What right, then, was granted? Why, the right to tax the "bridge itself." The bridge, as distinguished from its abutments and approaches, is that part that is over the water. Now, the appellee, according to the Louisville Bridge case, in its municipal capacity, had no right to tax that part of the bridge over the water. Why, then, say that it did not waive the right to tax it? To waive a right there must be a claim of right to waive. Well, it is said, as the appellee had no right to tax the bridge, there was, in fact, no right to waive. As an abstract proposition of the right to tax the bridge on the water (according to said case), this contention is true; but it is equally true that the appellee had the right, if asserted and agreed to, to claim that the bridge should be taxed in consideration of the privileges granted. This claim of right, it must be presumed, was asserted and agreed to, and expressed in the contract by the term "not waiving the right." If the contract does not mean this, then it

means nothing. It is not supposed that the contracting parties only meant to reserve a right that they already had, and about which there was no possible ground of dispute; but when it is considered that the right to tax the bridge to the Indiana shore might be legitimately obtained by contract, and that the appellee granted to the appellant rights and privileges essential to its enterprise, designed to make money, and is making a large per cent., it is entirely reasonable to suppose that the appellee would contract for the right to thus tax the appellant in consideration of granting these essential rights and privileges, by which the appellant acquired the right to conduct and operate so profitable a business enterprise. As said, the privilege was granted to the appellant upon the consideration of the appellee reserving the right to tax the entire property to the Indiana shore, which was expressed by the term, "nothing herein shall be construed as waiving that right." To give the contract any meaning, it means this, otherwise it would be a mere *nudum pactum.*

The appellant, at least for the purpose of collecting taxes, should be considered as a part of a railroad, and, consequently, falls within the principle announced in Elizabethtown and Paducah R. Co. v. Trustees of Elizabethtown, 12 Bush, 239, opinion by Judge Lindsay.

The judgment is affirmed.

JUDGE PRYOR dissenting.

CHIEF JUSTICE HOLT delivered the following separate opinion:

The Legislature, by authorizing the imposition and

collection of the railroad and school taxes upon the real estate within the city limits, created a taxing district. The power to collect these taxes was, therefore, conferred upon the appellee as such a district, and the appellant's property being within it is liable for them.

As to the municipal taxes proper, the appellant's property is within the corporate limits, and, in my opinion, receives such benefits from the municipal government as render it both legally and justly liable for them.

Upon these grounds I concur in an affirmance of the judgment of the lower court.