FIRST NAT. BANK OF COVINGTON v. CITY OF COVINGTON et al.

(Circuit Court, E. D. Kentucky. May 26, 1903.)

No. 2,195.

1. Res Judicata—Questions Concluded by Judgment—Subsequent Suit on Different Cause of Action.

Under the rule of the federal courts, a decision by the highest court of a state that the acceptance by a bank of a statute imposing taxes created a contract with the state by which the bank was exempt from local taxation during the term of its charter renders such question res judicata between the parties to the suit, and it cannot be again litigated between them in a subsequent suit, although it is on a different cause of action, arising under a law subsequently passed.

2. Same.

The fact that the judgment of a court might have been based upon a ground other than that on which it was actually based does not prevent the determination that such ground existed from being conclusive in a subsequent suit between the same parties, if its existence was in issue in the former suit, and properly formed the basis of the judgment therein.

3. Same—Federal Courts—Following Rule of State Courts.

Although a judgment of a state court would render a question res judicata in a subsequent suit between the same parties, under the rule of the federal courts, yet a federal court will not give it such effect where it would not be an estoppel under the rule of the highest court of the state.

4. Taxation—National Banks—Kentucky Statutes.

Act Ky. March 21, 1900 (Acts 1900, p. 65, c. 23), providing for the taxation of shares of national banks, is valid and enforceable, as applied to taxes for subsequent years, and a bank is not exempted from its operation because of its acceptance of the provisions of the Hewitt act of 1886 (Acts 1885–86, p. 140, c. 1233), which, as has been authoritatively determined, did not create an irrevocable contract with the state.

In Equity. Suit to enjoin collection of taxes.

S. D. Royce, for First Nat. Bank.

F. J. Hanlon, for City of Covington.

COCHRAN, District Judge. The Supreme Court of the United States, upon the appeal from the decree entered herein December 17, 1900 (103 Fed. 523), held that said decree was not final, but interlocutory, and hence not appealable (185 U. S. 270, 22 Sup. Ct. 645, 46 L. Ed. 906). It did so because the decree did not dispose of the entire controversy presented by the pleadings herein. That controversy involves the right of the defendant city of Covington, under the act of March 21, 1900 (Acts 1900, p. 65, c. 23), to collect from complainant any taxes whatever; i. e., taxes for the years after that date until the expiration of its charter, November 17, 1904, as well as taxes for the years prior thereto, since the adoption of the revenue law of 1892. A single ground is urged by complainant for nonliability on its part for taxes under said act for any period of time either before or after its

¶ 1. See Judgment, vol. 30, Cent. Dig. § 1508.

¶ 3. Conclusiveness of judgments between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.

passage. That ground is that in a former suit brought by it against said defendant in the circuit court of Kenton county, Ky., afterwards transferred to the circuit court of Campbell county, and appealed to the Court of Appeals of Kentucky, to enjoin the collection of city taxes from it for the year 1893 under said revenue law of 1892, it was adjudged by the two latter courts that it had an irrevocable contract with the state of Kentucky, under the Hewitt law of 1886, by which it was exempted until the expiration of its charter, November 17, 1904, from all other taxes than that provided by said law, and because thereof it was not liable for city taxes for said year 1893 under said revenue law of 1892. The opinion of the Court of Appeals rendered in said case is contained in 97 Ky. 590, 31 S. W. 1013. An additional ground is urged for nonliability on complainant's part to defendant for taxes under said act of March 21, 1900, prior to its passage, and that is that said act, in so far as it relates to taxes for that period of time, is discriminatory and repugnant to section 5219, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3502]. Judge Evans held that said portion of said act was invalid on this ground, and, because of this, enjoined and restrained the defendants from assessing complainant's property under said act for said years. 103 Fed. 523. This is as far as the decree goes. He did not determine whether complainant was liable for no taxes at all, on the ground relied on by it in support of its contention that it was not, and hence the decree leaves the controversy as to taxes after March 21, 1900, undisposed of.

The decree not being final, but interlocutory, for the reason stated, I have the power to set it aside if I think that it is wrong, and see fit to do so. But it is one thing for me to have such power, and another for it to be proper for me to exercise that power. The decree was entered by Judge Evans after due consideration of the questions involved. I am of equal rank with him, and have no appellate jurisdiction over his action. Comity requires, therefore, that I should permit it to stand, so far as it goes. In allowing it to stand on this ground, I do not mean to intimate any doubt as to the correctness of the position upon which he based it. I have simply refrained from any consideration of it, being under no necessity to do so. It is incumbent upon me, however, to dispose of so much of the controversy as relates to the taxes after March 21, 1900, which has been left undisposed of by Judge Evans. The liability of complainant for these taxes depends entirely upon the correctness of the position taken by it that it was not liable for any taxes under said act either before or after its passage, because of the adjudication hereinbefore referred to, and, if well taken, it affords an additional reason for permitting Judge Evans' action to stand.

It is certain that if I am free to determine the question whether complainant, by its acceptance of the Hewitt law in 1886, acquired an irrevocable contract from the state of Kentucky exempting it from all other taxation than that provided in said law until the expiration of its charter, on its merits I would have to hold that it did not thereby acquire such a contract. Bank Tax Cases, 102 Ky. 174, 39 S. W. 1030; Citizens' Savings Bank v. Owensboro, 173 U. S. 636, 19 Sup. Ct. 530, 43 L. Ed. 840. And complainant so concedes. Its sole re-

liance is on the adjudication in the former suit. It claims that the question as to whether it so acquired such a contract is res judicata—a thing adjudged—and that it cannot now be claimed that it did not. It is certain that in said suit it was adjudged by the Campbell circuit court, and afterwards on appeal by the Court of Appeals, that such a contract had been made by the state of Kentucky with complainant, and that it was irrevocable. Both courts delivered written opinions, and both opinions are made part of complainant's bill. It is true that the Campbell circuit court also adjudged that the taxes levied by the revenue law of 1892 upon national banks were franchise taxes, and hence invalid, and that on this ground, as well as the existence of the contract, complainant was not liable for the taxes of 1893. But the latter was the main ground of its action, and such was the only ground upon which the Court of Appeals based the affirmation of its judgment.

The defendants urge several reasons why the former adjudication should not be accepted in this suit as conclusive of the existence of such an irrevocable contract in complainant's favor. They say that this suit is upon an entirely different cause of action. It is a suit to enjoin the collection of taxes for subsequent years authorized to be collected by another and subsequent act of the Legislature. This is undoubtedly true. But does this fact make any difference? I think not. It is well settled that a thing adjudged in a former suit cannot be questioned in a subsequent suit between the same parties, although the latter is upon an entirely different cause of action. In the case of Southern Pac. Ry. Co. v. U. S., 168 U. S. 48, 18 Sup. Ct. 27, 42 L. Ed. 355, Mr. Justice Harlan said:

"The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order, for the aid of judicial tribunals would not be invoked for the vindication of rights of persons and property if, as between parties and their privies, conclusiveness did not attend the judgment of such tribunals in respect of all matters properly put in issue and actually determined."

This principle has been applied by the Supreme Court of the United States in cases where the two suits related to different years' taxes. City of New Orleans v. Citizens' Bank of La., 167 U. S. 371, 17 Sup. Ct. 905, 42 L. Ed. 202; Baldwin v. Maryland, 179 U. S. 220, 21 Sup. Ct. 105, 45 L. Ed. 160.

In the former case Mr. Justice White points out that:

"The argument that, because a tax of one year is a different cause of action from the tax of a subsequent year, therefore a demand for a tax of a subsequent year can never be concluded by the thing adjudged in the prior year, admits the relevancy of res adjudicata to demands for taxes, but contends that wherein there are different demands the thing adjudged has no applica-

tion, although the last demand may depend upon a question which has previously been determined under the same facts and circumstances."

To this argument he responds thus:

"The proposition that, because a suit for taxes of one year is a different demand from the suit for a tax for another, therefore res judicata cannot apply, whilst admitting in form the principle of the thing adjudged, in reality substantially denies and destroys it. The estoppel resulting from the thing adjudged does not depend upon whether there is the same demand in both cases, but exists even although there be different demands, when the question upon which the recovery of the second demand depends has, under identical circumstances and conditions, been previously concluded by a judgment between the parties or their privies. This is the elemental rule stated in the text-books, and enforced by many decisions of this court."

To the argument that "it would be intolerable to recognize that a judgment as to the tax of one year could be conclusive as to the tax of a subsequent year," and that, "as a matter of public policy and public necessity, the principles of the thing adjudged can never apply to taxation," he responds thus:

"The argument that, as a matter of public policy, the principle of the thing adjudged should be held not to apply to controversies as to taxation, if there be merit in it, should be addressed to the lawmaking, and not to the judicial, department. But if the judicial mind could entertain the suggestion, it seems clear that it is not without real merit.. In its ultimate aspect, it asserts that no question concerning government or public authority ought ever to be submitted to judicial investigation. Indeed, the contention is that there is no power in courts of justice to consider any question of taxation, or render any judgment in relation thereto. That this is the result of the proposition is manifest from the fact that the very essence of judicial power is that, when a matter is once ascertained and determined, it is forever concluded, when it arises again, under the same circumstances and conditions, between parties or their privies. To admit the judicial power on the one hand, and to deny on the other the very substance and essence of such power, is not only contradictory, but destructive of the fundamental conceptions upon which our system of government is based. Under this theory, the case under consideration should not be entertained, but should be dismissed. Accepting this argument in its full consequence, every judgment rendered by this court from the foundation of the government, declaring a particular tax or burden unconstitutional, imports no efficacy whatever. Every decree of this court enforcing taxation in order to discharge obligations previously contracted, where the right to the tax was a part of the obligation, is deprived of the sanctity of the thing adjudged, for, manifestly, if the estoppel of the thing adjudged does not arise from a judgment preventing taxation, such an estoppel cannot also result from a judgment enforcing taxation."

In the latter case Mr. Justice Brewer said:

"The controversy in the case reported in 85 Md. 145, 36 Atl. 764 [Baldwin v. County Com'rs, etc.], was one between the estate of the ward and the state of Maryland. In that case the right of the state to compel a payment by the estate of the ward of taxes levied thereon for the years 1893 and 1894 was settled. * * * The matter has become res judicata between the estate and the state. There is no pretense that the taxes of 1895 stand in any other condition, as to the matter of fact, than the taxes of 1893 and 1894, which were, in terms, included within the litigation settled by the decision referred to. The ruling, therefore, as to the taxes for 1895 comes within the force of that decision, and is determined by the conditions in respect to the taxes of 1893 and 1894. Johnson Steel R. Co. v. Wharton, 152 U. S. 252 [14 Sup. Ct. 608, 38 L. Ed. 429]; Last Chance Mining Co. v. Tyler Mining Co., 157 U. S. 683 [15 Sup. Ct. 733, 39 L. Ed. 859]; New Orleans v. Citizens' Bank, 167 U. S. 371 [17 Sup. Ct. 905, 42 L. Ed. 202]."

And it has been applied by the Circuit Court of the District of Kentucky and the Supreme Court of the United States in cases exactly like the one in hand, save in a particular hereinafter referred to. Bank of Kentucky v. Stone (C. C.) 88 Fed. 394; Northern Bank v. Stone (C. C.) 88 Fed. 413; Farmers' Bank v. Stone (C. C.) 88 Fed. 987; Louisville Banking Co. v. City of Louisville (C. C.) 88 Fed. 988; Third National Bank v. City of Louisville (C. C.) 88 Fed. 990; Stone v. Farmers' Bank, 174 U. S. 409, 19 Sup. Ct. 880, 43 L. Ed. 1027; Stone v. Bank of Kentucky, 174 U. S. 408, 19 Sup. Ct. 881, 43 L. Ed. 1187; City of Louisville v. Louisville Banking Co., 174 U. S. 408, 19 Sup. Ct. 881, 43 L. Ed. 1027; Stone v. Deposit Bank, 174 U. S. 408, 19 Sup. Ct. 881, 43 L. Ed. 1027.

Again, defendants urge that this suit is not only to enjoin the collection of different years' taxes, but taxes imposed on the shares of stock of national banks by the act of March 21, 1900, whereas the former suit was to enjoin the collection of taxes levied on the franchise of national banks by the revenue law of 1892, which law, by reason of the fact that the taxes were so imposed, was invalid, and the collection of which taxes complainant was entitled to have enjoined on this ground alone, without reference to the question whether it had an irrevocable contract exempting it from other taxes than those imposed by the Hewitt law (Acts 1885–86, p. 140, c. 1233). This, too, is undoubtedly true. Owensboro Nat. Bank v. Owensboro, 173 U. S. 664, 19 Sup. Ct. 537, 43 L. Ed. 850. It is in this particular that this case is unlike the cases hereinbefore cited, which otherwise are, as stated, exactly like it. In all of them, except that of Third National Bank v. City of Louisville, 88 Fed. 990, the banks involved were state banks, and in that case the Circuit Court for the District of Kentucky held that the revenue law of 1892 was valid in so far as it affected national banks, basing its judgment entirely on the former adjudication as to the existence of an irrevocable contract under said Hewitt law in favor of said bank; and the Supreme Court of the United States affirmed said judgment on the ground that said revenue law of 1892 was invalid as to national banks, and waived a consideration of the effect of said former adjudication. City of Louisville v. Third National Bank, 174 U. S. 435, 19 Sup. Ct. 874, 43 L. Ed. 1037.

Does, then, the fact that said revenue law was invalid as to national banks, and complainant was entitled in the former suit to an injunction against the collection of the taxes for the year 1893 imposed by said law, on this ground alone, without reference to the question as to whether it was invalid as to complainant, also, because it impaired the obligation of an irrevocable contract between it and the state, under the Hewitt law, make any difference? I do not think that it does. The fact that the judgment of a court in a suit might have been based upon another ground than that on which it was actually based does not prevent the determination that such ground existed being conclusive as to its existence in a subsequent suit between the same parties, if its existence was in issue in the former suit, and properly formed the basis of the judgment therein. Likewise, if a judgment in a suit is properly based upon two grounds, the determination therein that both grounds exist is conclusive as to the existence of either

ground in a subsequent suit between the same parties.   In Black on Judgments, vol. 2, p. 604, it is said that one of the two main rules which govern the law of estoppel by judgment, as the same may be deduced from the general result of all the authorities, is as follows:

"A point which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, cannot be again drawn in question in any further action between the same parties or their privies, whether the cause of action in the two suits be identical or different."

And again, on page 729, it is said:

"It is a fundamental and unquestioned rule that a former judgment, when used as evidence in a second action between the same parties or their privies, is conclusive upon every question of fact which was directly involved within the issues made in such former action, and which is shown to have been actually litigated and determined."

No exception is stated to this general rule, growing out of the fact that other points or facts were directly in issue in the former suit, and were or might have been litigated and determined therein, and formed the basis of the judgment therein.   As a counter rule it is stated on page 733 that the judgment is not conclusive "of any matter which was incidentally cognizable in that action, or which came collaterally in question, nor of any matter to be inferred by argument and construction from the judgment."   And on page 734 it is said that an important analogy to this counter rule "is found in the case of opinions of the appellate courts considered as authoritative statements of the law.   A point may be considered and passed upon by the court which comes only incidentally in question, and is not necessary to the determination of the case.   In that event the decision, so far as concerns that point, is merely obiter dictum, and not entitled to the weight of a precedent."   "But," he adds, "where the record in an action of which the court has jurisdiction fairly presents two points, upon either of which the decision might turn, and the court fully considers and determines both, the decision of neither can be considered as an obiter dictum, and the judgment is authorized on both points."

This latter statement of the law as to the authoritativeness of a decision of an appellate court upon two points involved in a case before it, upon either of which the decision might turn, in subsequent cases involving either one of them, finds support in the case of Hawes v. Water Co., 5 Sawy. 287, Fed. Cas. No. 6,235.   The question decided in that case was whether the court, in construing a state statute involved therein, was bound to follow a decision of the higher court of that state construing that statute.   It is well settled that the federal court must follow the construction put upon a statute by the highest court thereof, and equally well settled that it is not bound to do so if the decision of the state court is a mere dictum.   The subquestion in that case was whether the decision of the state court which it was claimed the federal court should follow was a dictum or not.   Judge Sawyer said:

"There were two grounds relied on to show that this was not a proper case for exercising the jurisdiction:   (1) That the board of supervisors is a legislative body, having a discretion to pass ordinances, and that the court ought not to interfere with its legislative discretion in advance, on the hypothesis

that it intends to pass an alleged ordinance, especially when it cannot be known in advance what its intention as a legislative body is; (2) that the city had a right to the water claimed, and a right to take the measures alleged to secure it in case the petitioner should shut it off, and for that reason, also, there was not a proper case for the prohibitory writ. Both grounds were distinctly and squarely presented by the record, and relied on, and the latter more especially fully argued by counsel. The court might just as well have rested its decision on the second ground, if found good, without noticing the first, as upon the first without noticing the second, or it might, if thought proper, have decided both, as it did. It is a matter of almost everyday occurrence that the record presents two or more points, either of which, if sustained, would determine the case, and the court decides them all. In such cases it can no more be said that one, rather than another, is obiter. In this case the court was earnestly pressed by counsel on both sides to decide the case on its merits, and give an authoritative construction of the statute. The great anxiety was to ascertain the right of the respective parties, and the mode was of no consequence. * * * To say now that the construction of the statute was merely obiter is to say that a vast amount of labor, research, energy, and anxiety was expended by counsel and court to no real purpose. * * * It is the very point upon which nearly all of the effort and research of counsel and court were actually expended. This discussion did not in any wise serve to illustrate the other point. Indeed, it had no relation whatever to it. It was a distinct, separate, and independent point, and the only one in the case that counsel or parties practically cared anything about. * * * I regard the construction put upon the clause in controversy by the Supreme Court in the prohibitive case cited as authoritative, and, being so, I rest my decision upon that case, without examining the question as an original proposition."

If, then, a decision by an appellate court of a point upon which a case turns, when there is another point upon which it might equally turn, or of both points, is authoritative in subsequent cases in the one instance as to the one point, or in the other as to either point, on the principle of stare decisis, or on the principle which governs federal courts in following the highest court of a state in construing its statutes, it is equally authoritative on the principle of res judicata in a case involving that principle. In the former suit between complainant and defendant city of Covington, the case turned on either of the two grounds hereinbefore stated. It was made to turn by the Campbell circuit court on both grounds—mainly, however, on the ground that complainant had an irrevocable contract, and by the Court of Appeals solely upon that ground. The decision therein that complainant had such a contract must therefore be accepted as conclusive in this state, notwithstanding the fact that the former suit could have been made to turn solely on the other ground, to wit, that the revenue law of 1892 was invalid as to national banks, because the taxes which it imposed on them were upon their franchises, which the legislature of Kentucky had no power to do. Had the state courts in the former suit granted complainant the relief which it sought therein, without giving any intimation as to the ground upon which they granted it, then the judgment therein would not have been conclusive herein upon the question as to whether complainant had an irrevocable contract. For then it could not be told upon what ground complainant had been granted that relief, and it is well settled that estoppels must be certain. In the case of Russell v. Place, 94 U. S. 606, 24 L. Ed. 214, Mr. Justice Field said:

"It is undoubtedly settled law that a judgment of a court of competent jurisdiction upon a question directly involved in one suit is conclusive as to that

question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record, or be shown by intrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indication which of them was thus litigated and upon which the judgment was rendered —the whole subject-matter of the action will be at large, and open to new contention, unless this uncertainty be removed by intrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible."

But no such uncertainty exists here. The sole ground upon which complainant in the former suit sought to have the revenue law of 1892 declared invalid as to it, and to enjoin collection of taxes by the defendant city under it for the year 1893, was the existence of said irrevocable contract; and the Campbell circuit court granted it that relief on that ground, though it did so on the other ground also, and the Court of Appeals affirmed its judgment on that ground alone. This is made clear by the records in the former suit, and there is no uncertainty whatever in regard to it.

Still further, defendants urge that the courts of Kentucky, if this suit were pending therein, would give no such effect to the adjudication in the former suit relied on herein, and therefore this court should not give it any such effect. In support of their contention that the courts of Kentucky would give no such effect thereto, they cite the following cases, to wit: City of Newport v. Commonwealth, 50 S. W. 845, 51 S. W. 433, 45 L. R. A. 518; Louisville Bridge Co. v. City of Louisville, 58 S. W. 598; Negley, Sheriff, v. City of Henderson, 59 S. W. 19; Bell County C. & I. Co. v. City of Pineville, 64 S. W. 525; City of Frankfort v. Deposit Bank, 65 S. W. 10; Louisville Bridge Co. v. City of Louisville, 65 S. W. 814. The case of City of Newport v. Commonwealth was a suit by the state against the city of Newport to recover taxes under the revenue law of 1892 for the year 1894 on the franchise of said city to operate waterworks. Several defenses were made to the suit. Amongst others was a plea of res judicata. It was alleged that suit had been brought against the city to recover taxes under said law of 1892 for the year 1893 on said franchise, and same had been dismissed by the circuit court, which judgment had never been set aside or reversed. It was claimed that this judgment made the question as to the liability of said city for franchise taxes under said law a thing adjudged, and was conclusive on the question. It was held by the court that the judgment in the former suit did not have this effect. And it would seem that the judgment of the majority of the court was placed upon the broad ground that in no case and to no extent could a judgment in a suit as to one year's taxes be res judicata as to another year's taxes. Judge Du Relle, in stating the opinion of the majority of the court, based the holding on this reasoning, to wit:

"The authorities seem to hold that when a court of competent jurisdiction has, upon a proper issue, decided that a contract, out of which several distinct promises to pay money arose, has been adjudged invalid in a suit upon one of these promises, the judgment is an estoppel to a suit upon another promise founded on the same contract. But taxes do not arise out of contract. They are imposed in invitum. The taxpayer does not agree to pay, and the right

to litigate the legality of a tax upon all grounds must, of necessity, exist, regardless of former adjudications as to the validity of a different tax." And again: "In our opinion, it would be against public policy to hold that a judgment of a circuit court upon a question of taxation is forever binding upon this court, not only as to the taxes there in litigation, but also as to taxes for all subsequent years, merely because counsel for the commonwealth failed to bring the question here. Such a ruling would seem to be open to the objection that it would hold the commonwealth bound by the laches of its officer."

It appears, from his response to a petition for rehearing, that the minority of the court, composed of three out of the seven judges, desired an extension of the opinion so as to include the qualification upon the general rule laid down as to the application of the doctrine of res judicata in tax cases, to wit:

"But whether the state is bound by a former adjudication that there exists a contract exempting from taxation, or as to the construction of such contract, is a question not necessarily involved here, and to the decision of which it may be that different principles apply. There would seem to be an essential difference between the commonwealth exercising the highest of its sovereign powers—a power necessary to its very existence—and the same commonwealth, its sovereignty laid aside, binding itself as a mere corporate entity by a sealed instrument. But it is not necessary, in our judgment, to go into this question, nor even to decide that there is a difference."

The two cases, styled alike "Louisville Bridge Company v. City of Louisville," were two suits by said city against the bridge company—the one, to recover city taxes on its bridge (its tangible property) for the years 1890, 1891, 1892, 1893 and 1894; the other, to recover same on same for the years 1895 and 1896, and also city taxes on its franchise (its intangible property) for the years 1894, 1895, 1896 and 1897. In the case of Louisville Bridge Company v. City of Louisville, 81 Ky. 189, which was a suit by said city against said bridge company to recover city taxes on its bridge for the year 188–, it had been held that the said bridge was not liable to city taxes, because it was not the recipient of the benefits of municipal government. This former adjudication was relied on as a bar in the two subsequent suits to recover taxes for the latter years. It was held that it was not a bar. In the former of the two cases, Judge Burnam said:

"In response to appellant's plea of res judicata, it may be said that this identical question was before the court in the case of Henderson Bridge Co. v. City of Henderson, decided June 24, 1896 [90 Ky. 498, 14 S. W. 493], and in the very recent cases of Newport v. Masonic Temple Ass'n, 45 S. W. 881, 46 S. W. 697, and City of Newport v. Com., 50 S. W. 845, 51 S. W. 433 [45 L. R. A. 518]. It was held that a judgment as to the validity of taxes for one year is not conclusive as to the validity of taxes on the same property for another year, and, as the question is fully considered in these cases, it is unnecessary to elaborate it again."

In the latter of the two he said:

"The plea of res judicata relied on for reversal has been decided so frequently adversely to the contention here made, in recent decisions of this court, that it is unnecessary for it to consider this question; it having been expressly decided that a judgment by a court of competent jurisdiction in a suit for taxes of one year did not constitute a bar in a subsequent suit between the same parties under the same law for another year's tax. See Henderson Bridge Co. v. City of Henderson, 90 Ky. 498, 14 S. W. 493; Same v. Com., 99 Ky. 623, 31 S. W. 486, 29 L. R. A. 73; City of Newport v. Com. [Ky.] 50 S. W. 845, 45 L. R. A. 518."

In regard to these two cases, it is to be noted that as to all the taxes involved therein, save for the years 1890 and 1891, there was not the same question as was adjudged in the earlier case in 81 Ky. 189, and as to those two years it was held that the bridge company was not liable. As to the other years, there was not the same question, because it had been held in previous cases referred to in said two cases that section 174 of the Constitution of Kentucky, adopted September 28, 1891, which applied to all years after 1891, had changed the rule in regard to the liability of property in cities and towns not enjoying the benefits of municipal government. The bridge company was held not liable for the years 1890 and 1891, not on the ground of said former adjudication, but because it had acted on it, and not collected taxes from its tenants for those years, who were under an obligation to it to pay all its taxes. As to the cases cited by Judge Burnam in said extracts from his opinions in support of the proposition there laid down, none of them are to that effect, save the Newport Case, to which we have already referred. The Henderson Bridge Cases do not involve any question as to res judicata, except that one decided June 24, 1896, and in that case its decision was expressly waived. The question in the case of Newport v. Masonic Temple Ass'n was the same as that involved in the Louisville Bridge Company Cases as to taxes after 1891. The charter of the Masonic Temple Association, passed March 29, 1880, exempted its property from taxation. It had been sued for taxes for several years prior to the new Constitution of 1891, and held not liable, because of this exemption. In a suit for taxes after the adoption of that Constitution, it was held that that instrument repealed said exemption, and that hence the former adjudication was no bar to suit for said taxes. The only case so cited which was in point was the Newport Waterworks Case, which is the pioneer and leading authority in Kentucky upon the question under consideration.

The case of Negley, Sheriff, v. City of Henderson was a suit by said city against the sheriff of Henderson county to enjoin collection of state and county taxes for the years 1896 and 1897 on its franchise to operate waterworks in said city. In support of its claim not to be liable for taxes on said franchise, the city alleged in its petition that, in a former suit by it against the sheriff, the circuit court of Henderson county had enjoined the collection of taxes on its tangible property for the years 1894 to 1897, inclusive. It was held that the former adjudication was not conclusive of the city's right to enjoin said franchise taxes. Judge Du Relle said:

"This brings us to consider the question of res judicata. It was, in City of Newport v. Commonwealth, supra, distinctly and emphatically held that an adjudication as to the tax of one year did not create the estoppel of res judicata against the tax for another year. It seems to us equally clear that it does not create an estoppel against the collection of a different tax upon different property for the same year. If the one proposition be true, the other must be true also."

The case of Bell County C. & I. Co. v. City of Pineville was a suit by said company against said city to enjoin collection of taxes upon its property within said city for the years 1895 to 1898, inclusive, or

the ground that it was used for farming purposes, and derived no benefit from the city government. A judgment in a similar suit of the Bell circuit court enjoining the collection of taxes for the year 1891 on the same ground was pleaded by the company as concluding the question of its liability for the subsequent year's taxes. It was held that it had no such effect. Judge Du Relle said:

"The case of City of Newport v. Com., 50 S. W. 845, 51 S. W. 433, 45 L. R. A. 518, is decisive of the question raised by this plea of res judicata."

It will be noted here, though not referred to in the opinion, that the rule as to liability of property in a city, not enjoying the benefits of municipal government, to city taxation, was changed between the year 1891, taxes for which were involved in the former suit, and the years 1895 to 1898, inclusive, taxes for which were involved in the suit in hand, by the Constitution of 1891, so that in no event was the doctrine of res judicata applicable to the case.

The case of City of Frankfort v. Deposit Bank is somewhat novel in its character. The Franklin circuit court, in a suit by the city against the bank for taxes for the years 1893 and 1894 under the revenue law of 1892, adjudged, under authority of the decisions of the Court of Appeals in the first Bank Tax Cases, that the bank was not liable therefor, because it had an irrevocable contract, under the Hewitt law of 1886, exempting it from taxation other than under said law. Thereafter, in a suit by the bank against the city in the United States Circuit Court for the District of Kentucky, the latter was enjoined from collecting taxes under said revenue law of 1892 for the years 1895 to 1898, inclusive, on the ground of the adjudication that it had such a contract in the former suit in the Franklin circuit court; and that notwithstanding that the Court of Appeals, in the second Bank Tax Cases, had overruled its decision in the first Bank Tax Cases, on authority of which the judgment of the Franklin circuit court had been rendered. This judgment was affirmed by the Supreme Court of the United States on an appeal therefrom by the city. Stone v. Deposit Bank of Frankfort, 174 U. S. 408, 19 Sup. Ct. 881, 43 L. Ed. 1027. After the decision of the Court of Appeals in the second Bank Tax Cases, time for an appeal from said judgment of Franklin circuit court not having elapsed, an appeal was taken therefrom to the Court of Appeals, and it reversed the judgment on authority of its decision in the second Bank Tax Cases. On the return of the case to the Franklin circuit court, the bank pleaded the judgment of the United States Circuit Court, affirmed by the Supreme Court, as to taxes from 1895 to 1898, inclusive, which had been based upon said former judgment of Franklin circuit court as to years 1893 and 1894, in bar of the city's right to recover taxes for said years in said suit. It was held that the plea was not good, and, on appeal to the Court of Appeals, it affirmed the ruling of the lower court. In the opinion, after showing that the doctrine of res judicata could not be applied in such a case, Judge Paynter added:

"However, we do not hold that the judgment of the federal court is not a bar to a recovery of the taxes for the years 1893 and 1894. This court, in City of Newport v. Com., 50 S. W. 845, 51 S. W. 433, 45 L. R. A. 518, and Louisville Bridge Co. v. City of Louisville, 58 S. W. 598, held that an adjudication as to

one year's taxes is not a bar to a recovery in the litigation as to any other year's taxes."

This detailed examination of the cases relied on by defendants in support of their contention that, according to the law as laid down in the state courts, the former adjudication relied on herein is not conclusive of complainant's exemption from liability for the taxes involved herein, because they are taxes for years different from and subsequent to the year for which the taxes involved therein were levied, leads to the conclusion that the contention is correct, though some, if not most, of said cases, for the grounds stated, are not in point, and in none of them was the former adjudication based upon an exempting contract covering all of the years' taxes involved in both suits. I think that there can be no question as to this. Complainant cites the cases of Thompson y. Louisville Banking Co., 55 S. W. 1080; Hardwicke v. Young, 62 S. W. 10, decided by the Court of Appeals of Kentucky, as being contra to defendants' contention in the matter under consideration. These cases, however, are not against that contention. In each case the same year's taxes were involved in that court on a second appeal. Of course, a decision of the Court of Appeals that a certain year's taxes are invalid is binding as to the validity of that year's taxes on a second appeal of that case to that court. And a holding that its former decision in that same case is binding is not an authority in favor of the position that a decision that one year's taxes rendered in one case is binding in another case as to another subsequent year's taxes.

It must be accepted, therefore, that the state courts, in view of said decisions, would not give the effect to the former adjudication relied on herein by complainant which it contends for, and which this court, under the decision of the Supreme Court of the United States hereinafter cited, would otherwise be bound to give it. It remains to be considered what effect is to be given to this fact. And here we are not without authority proceeding from the Supreme Court. In the case of Union & Planters' Bank v. City of Memphis (decided April 13, 1903) 189 U. S. 71, 23 Sup. Ct. 604, 47 L. Ed. 712, it was held that a former adjudication in the state courts between the parties thereto in relation to the liability of the former to the latter for taxes for the years 1889 to 1891, inclusive, was not conclusive as to such liability for the year 1899, because it was not conclusive in the state courts. Mr. Chief Justice Fuller, in delivering the opinion of the court, said:

"It is enough that in Tennessee the doctrine of res judicata is not applicable to taxes for years other than those under consideration in the particular case, inasmuch as what effect a judgment of a state court shall have as res judicata is a question of state or local law, and the taxes involved in this suit are taxes for years other than those involved in the prior adjudication. Phœnix Fire & Marine Ins. Co. v. Tennessee, 161 U. S. 174 [16 Sup. Ct. 471, 40 L. Ed. 660]. In New Orleans v. Citizens' Bank, 167 U. S. 371 [17 Sup. Ct. 905, 42 L. Ed. 202], referred to by appellant's counsel, no claim was made that the judgment relied on would not have been res judicata in the state courts, and attention was particularly called to the fact that the rule in Louisiana was in accord with the conception of res judicata expounded in that case. As the judgment pleaded had no force or effect in the Tennessee state courts, other than as a bar to the identical taxes litigated in the suit, the courts of the United States can afford it no greater efficacy. Cooper v. Newell, 173 U. S.

555 [19 Sup. Ct. 506, 43 L. Ed. 808]; Metcalf v. Watertown. 153 U. S. 671 [14 Sup. Ct. 947, 38 L. Ed. 861]; Chicago & Alton R. R. Co. v. Wiggins Ferry Co., 108 U. S. 18 [1 Sup. Ct. 614, 27 L. Ed. 636]; Rev. St. § 905 [U. S. Comp. St. 1901, p. 677]."

This case is binding upon me, and settles the matter in accordance with defendant's contention. It is true that in the cases hereinbefore cited the Supreme Court held, as to certain of the banks involved along with the complainant in the litigation which resulted in the decision in 97 Ky. 590, 31 S. W. 1013, that they were exempted from other taxation than under the Hewitt law by an irrevocable contract; that said decision made the question res judicata as to subsequent years. But at the time it so held, there had been no decision by the Court of Appeals of Kentucky as to the effect of an adjudication in relation to one year's taxes upon other years' taxes. Since then, as we have seen, that court has taken the position that such adjudication is not a bar to a consideration of the question of the liability for the other year's taxes on its merits. That being so, I feel bound by the decision of the Supreme Court in the Tennessee case to hold that the former adjudication relied on herein is not a bar to a consideration of complainant's liability for the taxes involved herein on the merits. And so considering it, I am bound by the decision of the Kentucky Court of Appeals in the second Bank Tax Cases, and of the Supreme Court in the Owensboro Case, to hold, also, that complainant has no irrevocable contract under the Hewitt law, and that therefore the complainant is liable under the act of March 21, 1900, to the taxes which have accrued or will accrue since its passage.

A decree will therefore be entered dismissing complainant's bill as to said taxes, and permitting the decree entered pursuant to the opinion of Judge Evans in relation to former years' taxes to stand as entered.